In re:  FIRST STATE BANCORPORATION,                    No. 7-11-11916 JA

      Debtor.

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on the Trustee's First Amended Application to Retain Alston & Bird LLP as Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327(a), (c), and 328(a) ("Amended Application to Employ Alston & Bird").  *See* Docket No. 119.  The Federal Deposit Insurance Corporation, as Receiver for First Community Bank ("FDIC-R") opposes the Application to Employ Alston & Bird.  *See* Docket No. 123.  At issue is whether Alston & Bird LLP ("A&B"), the law firm that currently represents Wilmington Trust Company in its capacity as indenture trustee ("Wilmington-IT") in this bankruptcy case, is disqualified from also representing the Chapter 7 Trustee as special counsel.

The Court held a final hearing on the Amended Application to Employ Alston & Bird on February 5, 2013 and took the matter under advisement.   Hunt & Davis, P.C.  (Chris W. Pierce) appeared for Linda S. Bloom (the "Chapter 7 Trustee" or "Trustee").  Jeffrey A. Sandell, in-house counsel for the Federal Deposit Insurance Corporation, and Katten Muchin Roseman LLP (Joshua David Wayser), appeared for FDIC-R.  Hunt & Davis, P.C. is the Trustee's general counsel in this Chapter 7 bankruptcy case.

The Chapter 7 Trustee seeks to employ A&B as special counsel to represent her in the following matters:  1) to advise the Chapter 7 Trustee regarding the claim of FDIC-R against the estate and to litigate the priority status of FDIC-R's claim; and 2) to evaluate the viability of a potential claim of the bankruptcy estate to recover a tax refund ("Tax Refund" or "tax refund") from the Internal Revenue Service (the "Tax Refund Litigation") and prosecute such claim as

necessary.  At the close of the final hearing, the Court directed the Chapter 7 Trustee and FDIC-R each to file a document in this bankruptcy case indicating whether the priority status of FDIC-R's claim should be determined before the Chapter 7 Trustee pursues the Tax Refund Litigation. The Trustee opposes being required to litigate the priority status of FDIC-R's claim before pursuing the Tax Refund Litigation while FDIC-R believes the priority status of its claim should be determined first.[1]

After considering the Application to Employ Alston & Bird; the Trustee's Special Counsel's Disclosure Statement Pursuant to Bankruptcy Rules 2014 and 2016; the FDIC-R's objection; the evidence presented at the final hearing; argument of counsel; and the post-hearing Statement, Response, and Reply; and being otherwise sufficiently informed, the Court finds that an actual conflict exists which disqualifies A&B from representing the Chapter 7 Trustee as special counsel.

FACTS, BACKGROUND, AND PROCEDURAL HISTORY

First State Bancorporation (the "Debtor") commenced this Chapter 7 case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code on April 27, 2011 following the closure of First Community Bank of Taos (the "Bank") by the New Mexico Financial Institutions Division.  FDIC-R was appointed receiver for the Bank.  The Debtor is the Bank's holding company.  Linda S. Bloom is the duly appointed Chapter 7 Trustee for the Debtor's estate.

A&B currently represents Wilmington-IT in connection with this Chapter 7 case. Wilmington-IT has filed seven proofs of claim in this bankruptcy case.  Each of Wilmington-

---

[1] *See* Trustee's Statement Regarding Determination of FDIC-R's Priority Claim before Litigation of Tax Refund Ownership ("Trustee's Statement"(Docket No. 150);  Response to Trustee's Statement Regarding Determination of FDIC-R's Priority Claim Before Litigation of Tax Refund Ownership ("Response")(Docket No. 152); Trustee's Reply to FDIC-R's Response to the Trustee's Statement Regarding Determination of FDIC-R's Priority Claim before Litigation of Tax Refund Ownership ("Trustee's Reply")(Docket No. 153).

IT's proofs of claim was filed as a non-priority unsecured claim. *See* Exhibits J, K, L, M, N, O, and P. The combined total amount of the claims Wilmington-IT filed exceeds $100 million. FDIC-R filed a proof of claim and an amended proof of claim in this bankruptcy case. *See* Exhibits V and W. FDIC-R's proof of claim was filed as a priority unsecured claim under 11 U.S.C. § 507(a)(9). *See* Exhibit W. The total amount of FDIC-R's claim, based on its claim for breach of the Debtor's guarantee of the Bank's obligations under a capital maintenance agreement, exceeds $63 million. *Id.* The only other party to file a proof of claim in this bankruptcy case is the New Mexico Taxation and Revenue Department ("NMTR"). NMTR filed a priority unsecured claim in the amount of $4,547.79. *See* Claims Register, Claim #1-1.[2]

In connection with this bankruptcy case, the Chapter 7 Trustee so far has worked with an accountant to file consolidated tax returns and to close out a 401(k) plan. She also liquidated a parcel of real estate. From the sale of the real estate, the Chapter 7 Trustee received approximately $1.1 million into the bankruptcy estate. She is not aware of any other assets to liquidate for the benefit of the bankruptcy estate with the exception of the potential tax refund.

The Chapter 7 Trustee learned about certain issues concerning bank holding companies, tax sharing agreements and potential claims for tax refunds that might arise in this bankruptcy case from talking with other trustees at bankruptcy trustee conferences. In the spring of 2011, Jonathan Edwards of A&B contacted the Chapter 7 Trustee. He informed the Chapter 7 Trustee that his firm represented Wilmington-IT, discussed with her tax sharing agreements and tax refund litigation in other cases around the country, and offered A&B's services as counsel for the Chapter 7 Trustee in connection with the bankruptcy estate's potential Tax Refund Litigation. The Chapter 7 Trustee feels comfortable that A&B is a reputable, large, national firm with

---

[2]On the parties' request at the final hearing, the Court took judicial notice of the documents filed of record in the Debtor's bankruptcy case, including the proofs of claim filed in the claims register.

experience in litigating the type of tax refund claim the estate may have. She did not talk with any other national law firms or other law firms with similar experience because she is confident of A&B's qualifications, and because she trusts and has developed a good working relationship with A&B's attorneys. She is not aware of any local firms that have experience in this specialized area. Because the Debtor scheduled Wilmington-IT as creditor holding non-priority unsecured claims, and because Wilmington-IT's proofs of claim were filed as non-priority unsecured claims, the Chapter 7 Trustee believes that there is no conflict in A&B's simultaneous representation of Wilmington-IT and the Chapter 7 Trustee as special counsel.

The Chapter 7 Trustee initially filed an application to retain A&B as special counsel on January 30, 2012 (the "First Application to Employ"). *See* Exhibit 8. The First Application to Employ sought to retain A&B "as special litigation counsel to the Trustee, to advise the Trustee regarding the viability of the Estate's claims in and to certain tax refunds in connection with that certain Tax Sharing Agreement, dated June 19, 2009, the alternatives under applicable law if such claims exist, and to serve as counsel in any litigation regarding the same should such a step become necessary." *Id.* A&B was to be paid a retainer of $10,000 to be used in connection with the investigation and evaluation of the estate's potential tax refund claims through the filing of a complaint against the FDIC-R. A&B would then be paid one-third of the net recovery on a contingent fee basis.

After the Chapter 7 Trustee filed the First Application to Employ, the Chapter 7 Trustee learned from the bankruptcy estate's accountant that the estimated potential tax refund dropped from $3 million to approximately $1.8 million. The Amended Application to Employ Alston & Bird proposes to reduce A&B's customary hourly rates to be charged to the Trustee by 25% and reduce the contingent fee percentage to 25%. *See* Exhibit 5. At the reduced rates, the hourly

-4-

rates for A&B's attorneys are $656.25 for work performed by Dennis J. Connolly and $337.50 for work performed by Jonathan Edwards. The Chapter 7 Trustee believes that the requested rates for A&B in the Amended Application to Employ Alston & Bird are commensurate with customary rates and fee arrangements charged for similar types of litigation around the country.

The Amended Application to Employ Alston & Bird seeks to retain A&B as special counsel for the Chapter 7 Trustee for the following matters:

(1) "to advise the Trustee regarding the viability of the Estate's claims in and to certain tax refunds in connection with that certain Tax Sharing Agreement, dated June 19, 2009, the alternatives under applicable law if such claims exist, and to serve as counsel in any litigation regarding the same should such a step become necessary;" and

(2) to "advise the Trustee regarding the FDIC-R's proof(s) of claim and . . . advise and represent the Trustee with regard to any causes of action, objections, defenses, counterclaims, third-party claims, or other relief related thereto under applicable law, as well as any other litigation with the FDIC-R in relation to the estate."

Amended Application to Employ Alston & Bird, ¶ 13.

A&B filed a disclosure pursuant to Fed.R.Bankr.P. 2014 and 2016 (the "Rule 2014 Disclosure"). *See* Exhibit 6. The Rule 2014 Disclosure includes the following disclosures: 1) A&B represents Wilmington-IT "in its capacity as indenture trustee for certain trusts that issued junior subordinated debt securities to certain holders"; 2) Wilmington-IT is a creditor of the Debtor's bankruptcy estate; and 3) A&B also represents Wilmington-IT in matters unrelated to this Chapter 7 bankruptcy case. *See* Exhibit 6 - ¶ 12. The Rule 2014 Disclosure also states that A&B is not a pre-petition creditor of the Debtor. *Id.* at ¶ 9.

The Chapter 7 Trustee testified that she does not generally evaluate the validity or priority status of filed proofs of claim until she has determined the amount of money in the estate available for distribution to unsecured creditors. At this time she has not fully-evaluated Wilmington-IT's claims nor the claim filed by the FDIC-R. She has made no determination as to

whether Wilmington-IT's claims are subject to subordination. She has not yet determined whether to object to the priority of FDIC-R's claim. She seeks to hire A&B to advise her on the latter issue.

The Chapter 7 Trustee has served as a panel Chapter 7 trustee for approximately fourteen years and has been a practicing attorney since 1976. The Chapter 7 Trustee testified that when she administers a bankruptcy estate she generally needs to know how much money she can expect to recover for the estate in order to determine whether it makes sense to object to claims, and that if spending estate funds to litigate an objection to claim will not benefit other claimants or the estate, it does not make sense from a cost-benefit analysis to pursue the litigation.

DISCUSSION[3]

A.  The Interests of the Estate's Competing Creditors

In this Chapter 7 case, two rival claimants have staked their claims to substantially all of the assets of the estate. Colloquially stated, the winner stands to take home all of the marbles.[4] The assets consist of approximately $1 million arising from the sale of real estate, and the estate's potential claim to a $1.8 million tax refund. FDIC-R has filed a claim for some $63 million based on the Debtor's guarantee of a capital maintenance agreement of a subsidiary failed federally insured bank. Wilmington-IT has filed claims, as indenture trustee, in excess of $100 million based on convertible debentures issued to investors.

FDIC-R's proof of claim is designated as a priority claim under 11 U.SC. § 507(a)(9), which gives ninth priority to:

---

[3] Any findings of fact included in the Discussion below are incorporated by reference in the Court's findings of fact section of this opinion.
[4] NMTR is the only other claimant in this Chapter 7 case. NMTR filed a priority claim in the amount of $4,547.79. The Trustee has approximately $1 million in cash on hand, and could pay that claim in full from those funds if the claim is allowed.

allowed unsecured claims based on any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution.

11 U.S.C. §507(a)(9).

If FDIC-R's priority claim under 11 U.S.C. § 507(a)(9) is allowed, FDIC-R will recover substantially all property of the estate to be distributed on account of prepetition claims. The estate property consists of the real estate sale proceeds and possibly the Tax Refund. If FDIC-R can establish that the Tax Refund is not property of the bankruptcy estate, FDIC-R also stands to recover the $1.8 million Tax Refund without a distribution to it from the estate. If the Trustee does not avoid the Debtor's obligation to FDIC-R under the Debtor's guarantee of a capital maintenance agreement as a fraudulent transfer under 11 U.S.C. § 548 or applicable state law, and cannot otherwise successfully challenge the priority status of FDIC-R's claim, FDIC-R would recover substantially all estate assets *and* get the economic benefit of the Tax Refund regardless of whether it is property of the estate. However, if FDIC-R's priority claim is allowed but the Trustee in the meantime incurs legal fees in the Tax Refund Litigation, FDIC-R's recovery will be diminished by the amount of those fees.

If the Debtor's obligation to FDIC-R is avoided as a fraudulent transfer, Wilmington-IT would stand to recover substantially all of the real estate sale proceeds and the tax refund if it is determined to be estate property, less chapter 11 administrative expenses. If the Debtor's obligation to FDIC-R is avoided as a fraudulent transfer, FDIC-R would have no allowed claim against the estate at all, and Wilmington-IT would be the only holder of a prepetition claim against the estate other than a *de minimus* tax claim.[5]

---

[5] FDIC-R states in its amended proof of claim, filed January 4, 2013, that it reserves the right to assert additional tort-based claims and claims based on avoidance and/or recovery of fraudulent transfers of an unspecified nature and in "undetermined amounts" if it can find any after conducting further investigation. *See* Exhibit W. For purposes of

-7-

B. <u>A&B has a disqualifying conflict with respect to the Chapter 7 Trustee's proposed retention of A&B as special counsel</u>

The Trustee wishes to employ A&B (Wilmington-IT's counsel in this Chapter 7 case) to advise the Trustee whether to assert the fraudulent transfer claim against FDIC-R and whether to litigate with FDIC-R over whether the Tax Refund is property of the estate. If the Trustee proceeds to litigate either or both matters, A&B would also represent the Trustee in the litigation. In both matters the Trustee and FDIC-R would be adverse parties.

The Trustee asserts that A&B does not have a disqualifying conflict in representing the Trustee in the fight over whether FDIC-R or Wilmington-IT is entitled to the estate's assets, even though A&B is bankruptcy counsel for Wilmington-IT in this Chapter 7 bankruptcy case. Under the facts and circumstances of this case, the Court disagrees.

A Chapter 7 Trustee's employment of special counsel is governed by 11 U.S.C. § 327 and 11 U.S.C. § 328. Section 328 authorizes the trustee to employ a professional person under 11 U.S.C. § 327 "on any reasonable terms" including employment on an hourly or contingent fee arrangement. Section 327(a) sets forth conditions for employment of professionals who have not represented and do not represent the debtor, and provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Under this section, the proposed counsel to be hired by a Chapter 7 trustee must satisfy two requirements to avoid a disqualifying conflict: 1) the attorney must not hold or represent an

---

this decision, the Court regards the claim asserted by FDIC-R in its amended proof of claim as its only claim against the estate.

interest adverse to the estate; and 2) the attorney must be disinterested. *See* 11 U.S.C. § 327(a); *In re 7677 East Berry Ave. Associates, L.P.,* 419 B.R. 833, 841 (Bankr.D.Colo. 2009)(setting forth the two requirements under § 327(a))(citing *In re Cook,* 223 B.R. 782, 789 (10th Cir. BAP 1998)); *In re Sarao,* 444 B.R. 496, 497 (Bankr.D.Mass. 2011)(stating that § 327(a) "requires both that each such professional hold or represent no interest adverse to the estate and that each such professional be a disinterested person.").

Section 327(a) is tempered somewhat by 11 U.S.C. § 327(c) for a proposed attorney who also represents a creditor in the bankruptcy case. *See Interwest Bus. Equipment, Inc. v. United States Trustee (In re Interwest Bus. Equipment, Inc.),* 23 F.3d 311, 316 (10th Cir. 1994)(explaining that "[s]ubsection (c) addresses the situation where dual representation of a creditor and debtor [trustee] is the *only* reason advanced for disqualification *and* the professional is otherwise qualified.")(emphasis in original).[6] Under 11 U.S.C. § 327(c), an attorney cannot be disqualified from representing the trustee

> solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

FDIC-R posits that Wilmington-IT is not a creditor inasmuch as Wilmington-IT filed its proofs of claim as an indenture trustee, and asserted that, therefore, the Chapter 7 Trustee cannot rely on 11 U.S.C. § 327(c) in seeking to employ A&B. The Court need not address this issue because, under Tenth Circuit precedent, which is controlling law in this District, "[t]he requirements of

---

[6]*But Cf. In re Johnson,* 312 B.R. 810, 820-821 (E.D.Va. 2004)("noting that some courts have disagreed on whether § 327(c) is an exception to the general rule set forth in § 327(a) or is instead an additional requirement that must be met when the trustee seeks to employ an attorney that represents a creditor[,]" but concluding that "§ 327(c) carves out an exception to the broad requirements of § 327(a) . . ."); *Sarao,* 444 B.R. at 498 and n.1 (stating that "where Bankruptcy Code §327(c) applies, § 327(a) does not[,]" but noting further that "[c]ourts endorsing a cumulative approach to § 327(a) and (c) . . . often reach the same result as those which interpret the two sections as being mutually exclusive.")(citation omitted).

subsection (a) are threshold requirements to be met even if subsection (c) is implicated."
*Interwest,* 23 F.3d at 316. *See also, Winship v. Cook (In re Cook),* 223 B.R. 782, 790 (10th Cir.
BAP 1998)(same). "[S]ubsection (c) of § 327 does not preempt the more basic requirements of
subsection (a)[.]" *Interwest,* 23 F.3d at 316. In other words, under Tenth Circuit precedent
binding on this Court, the effect of Section 327(c) is that simultaneous representation by an
attorney of both a bankruptcy trustee and a creditor is not a *per se* disqualifying conflict. If
Wilmington-IT is not a creditor, it does not need this protection.

> To hold an interest adverse to the estate means

> > (1) to possess or assert any economic interest that would tend to lessen the value of
> > the bankruptcy estate or that would create either an actual or potential dispute in
> > which the estate is a rival claimant; or (2) to possess a predisposition under
> > circumstances that render such a bias against the estate.

> > *In re Roberts,* 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd in part and rev'd in part
> > on other grounds,* 75 B.R. 402 (D.Utah 1987). *See also, In re AroChem Corp.,* 176
> > F.3d 610, 623 (2nd Cir. 1999)(quoting *Roberts* for the definition of the phrase "hold or
> > represent an interest adverse to the estate.").

To represent an interest adverse to the estate "means to serve as agent or attorney for any
individual or entity holding such an adverse interest." *Roberts,* 46 B.R. at 827. The term
"disinterested" is defined in 11 U.S.C. § 101(14). *Cook,* 223 B.R. at 789.[7] Under 11 U.S.C. §
101(14), a "disinterested person" is a person that "is not a creditor, an equity security holder, or
an insider" and "does not have an interest materially adverse to the interest of the estate or of any
class of creditors . . . " 11 U.S.C. § 101(14)(A) and (C). These two requirements under 11
U.S.C. § 327(a) "serve the important policy of ensuring that all professionals appointed pursuant
to section 327(a) tender undivided loyalty and provide untainted advice and assistance in

---

[7]*See also In re Kobra Properties, LLC,*406 B.R. 396, 402-403 (Bankr.E.D.Cal. 2009)(explaining that the meaning of
the term "disinterested" under 11 U.S.C. § 327(a) "requires a journey through the definitions of 'disinterested
person,'  'person,' 'creditor,' 'insider,' 'affiliate,' and 'relative.'").

-10-

furtherance of their fiduciary responsibilities." *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir. 1994).

Some courts interpret Section 327(a), where the trustee seeks to employ counsel only as "special counsel" for a specific matter, as only requiring that counsel have no disqualifying conflict with respect to the specific matter itself.[8] Because the Court finds that a disqualifying conflict exists with respect to the matters for which the Chapter 7 Trustee seeks to employ A&B, the Court need not address the question of whether the Court's analysis of a disqualifying conflict for special counsel retained pursuant to 11 U.S.C. § 327(a) should be restricted to the specific matters for which special counsel would be employed.

Though the phrase "actual conflict of interest" is contained in subsection (c) and not in subsection (a) of Section 327, a professional with an actual conflict of interest would necessarily also fail to meet the requirements of subsection (a). *See In re Champ Car World Series, LLC,* 411 B.R. 619, 624 (Bankr.S.D.Ind. 2008)(stating that "[s]ection 327(a), as well as the 'creditor exception' of §327(c) provides for a *per se* disqualification of any attorney who has an actual conflict of interest with representing the trustee."). *See also, In re Platinum Oil Properties, L.L.C.,* 2009 WL 5201851, *10 (Bankr.D.N.M. Dec. 23, 2009)("Section 327(a) of the

---

[8]These courts reason by analogy to subsection (e) of 11 U.S.C. § 327 (applicable only when proposed counsel also represents the debtor) that when applying subsections (a) and (c) in instances "'where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.'" *AroChem,* 176 F.3d at 622 (quoting *Stoumbos v. Kilimnik,* 988 F.2d 949, 964 (9th Cir. 1993)). *See also, In re Innomed Labs, LLC,* 2008 WL 276490, *3 (S.D.N.Y. Jan. 29, 2008)("Since the role of the special counsel is, by definition, limited, the trustee need only show that there is no adverse interest related to that role itself[.]"). Under this view, "where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for which special counsel is retained,* there is no conflict and the representation can stand." *AroChem,* 176 F.3d at 622 (emphasis in original)(citations omitted). *See also, In re Age Refining, Inc.,* 447 B.R. 786, 802 (Bankr.W.D. Tex. 2011)(stating that the relevant inquiry for determining whether special counsel hired for a limited purpose has a disqualifying conflict is whether the proposed counsel "holds or represents an interest adverse to that of the estate with respect to the specific causes of action for which the Trustee seeks to hire the firm."); *In re Peters Contracting, Inc.,* 301 B.R. 857, 860-61 (Bankr.M.D.Tenn. 2003)(acknowledging that §327(e) has no application where the proposed special counsel has not represented the debtor, but finding that where the interests of special counsel are aligned with the interests of the trustee with respect to the matters the trustee seeks to retain special counsel, no actual or potential disqualifying conflict exists).

-11-

Bankruptcy Code imposes a *per se* disqualification if counsel for the estate has an actual conflict of interest"). The Bankruptcy Code does not define "actual conflict of interest." *Cook,* 223 B.R. at 789. To determine whether an actual conflict of interest exists, bankruptcy courts exercise discretion and evaluate the particular facts and surrounding circumstances on a case-by-case basis. *In re BH & P, Inc.,* 949 F.2d 1300, 1315 (3rd Cir. 1991). *See also, Cook,* 223 B.R. at 789 (acknowledging that courts have "considerable latitude in using their judgment and discretion in determining whether an actual conflict exists.")(citing *BH & P,* 949 F.2d at 1315).

Here, if Wilmington-IT holds an interest that presently is adverse to the bankruptcy estate, an actual conflict exists that disqualifies A&B from representing the Chapter 7 trustee as special counsel.[9] Evaluation of whether Wilmington-IT presently holds such an adverse interest requires the Court to examine the role of the Trustee and the interests of the estate she represents.

Section 323(a) makes the Chapter 7 Trustee the estate's representative. 11 U.S.C. § 323(a). A Chapter 7 trustee's primary role in administering a debtor's bankruptcy estate "is to liquidate property for the benefit of unsecured creditors." *In re Buerge,* 479 B.R. 101, 106 (Bankr.D.Kan. 2012)(citation omitted).[10] However, to properly discharge her fiduciary duties to the bankruptcy estate, the Chapter 7 Trustee must administer the estate impartially, taking into account the interests of *all* creditors and the debtor.[11] *See United Pacific Insurance Co. v. McClelland (In re Troy Dodson Const. Co., Inc.),* 993 F.2d 1211, 1216 (5th Cir. 1993)(stating that "[t]he trustee owes a fiduciary duty to *all* the creditors, not just to the unsecured

---

[9] *Cf. Platinum Oil,* 2009 WL 5201851 at *10 (explaining that an actual conflict of interest constitutes a *per se* disqualification under § 327(a), "whereas the Court has discretion to disqualify counsel that has a potential conflict of interest.")(citing *In re Pillowtex, Inc.,* 304 F.3d 246, 251 (3rd Cir. 2002)(remaining citations omitted)).

[10] *See also,* 11 U.S.C. § 704(a)(1)(one of the duties of the chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest").

[11] The Court need not decide, and is not deciding, whether a chapter 7 trustee has a fiduciary duty directly to creditors or only a fiduciary duty to the estate.

creditors.")(emphasis in original); *In re McCombs,* 436 B.R. 421, 439 (Bankr.S.D.Tex. 2010)("As the representative of any Chapter 7 estate, the trustee has multiple fiduciary duties to the estate's creditors.")(citing *In re Melenyzer,* 140 B.R. 143, 154 (Bankr.S.D.Tex.1992)); *Blue Mountain Investments, Ltd. v. Bone (In re Blue Mountain Investments, Ltd.),* 186 B.R. 508, 516 (D.Kan. 1995)(a chapter 7 trustee has "'the duty to administer the estate 'impartially for the good of each and all of the creditors.'")(quoting *Wissman v. Pittsburgh Nat'l Bank,* 942 F.2d 867, 870 (4th Cir. 1991)(additional internal quotation marks and citation omitted)). As explained below, A&B's simultaneous representation of Wilmington-IT and the Chapter 7 Trustee will interfere with the Chapter 7 Trustee's obligation to administer the bankruptcy estate impartially, taking into account the interests of all creditors of the estate.

The Trustee reasons that the interests of Wilmington-IT and the Trustee are perfectly aligned with respect to the Trustee's assertion of a fraudulent transfer claim against FDIC-R and with respect to the claim to recover the Tax Refund for the estate, and, therefore, A&B has no conflict of interest in representing both A&B and the Trustee in these matters. She points out, for example, that the interests of a Chapter 7 trustee and a creditor holding a non-priority unsecured claim coincide when the result of a successful preference action will simply increase money for the estate in which all non-priority unsecured creditors will recover a greater pro rata share. *Cf. Stoumbos v. Kilimnik,* 988 F.2d 949, 964 (9th Cir. 1993)(finding that the estate's interests with respect to a preference action brought against another creditor coincided with the interests of proposed special counsel's creditor client). In that situation, no actual conflict generally exists between the interests of the Chapter 7 trustee and creditor's counsel retained by the Chapter 7 trustee to represent the trustee in the preference action.

-13-

In *Johnson,* the bankruptcy court pointed out that a Chapter 7 trustee as representative of the estate "necessarily must balance the interests of all the creditors for the benefit of the estate as a whole, and thus must in many instances subordinate one creditor's claim to another's." *Johnson,* 312 B.R. at 824 (citation omitted). The *Johnson* court reasoned further that because a trustee is often called upon "to act against the interests of some creditors for the benefit if the estate as a whole" proposed counsel should not automatically be disqualified where a creditor is the target of the litigation for which the trustee seeks to hire special counsel. *Id.*

The Court agrees that no conflict generally exists that would disqualify counsel for a creditor from representing a Chapter 7 trustee in fraudulent transfer or preferential transfer litigation. Generally, the interests of a Chapter 7 trustee and the holder of a non-priority unsecured claim coincide with respect to fraudulent transfer and preference litigation against another creditor; a successful recovery will simply increase the assets of the estate in which all non-priority unsecured creditors will recover a greater pro rata amount. Under 11 U.S.C. §§ 327(a) and (c) simultaneous representation of a creditor and a Chapter 7 trustee in proposed litigation against another creditor of the estate does not constitute a *per se* disqualification.

Here, each of the seven proofs of claim that Wilmington-IT filed designates the claims as non-priority unsecured claims. Wilmington-IT thus stands to receive along with any other non-priority unsecured creditors its pro rata share of the funds the Chapter 7 Trustee may recover for the benefit of the estate. However, because Wilmington-IT is one of essentially only two creditors of the estate, and the other creditor asserts a priority claim that must be disallowed for Wilmington-IT to receive any distribution from the estate, A&B's representation of the Trustee against the other competing creditor creates an impermissible actual conflict of interest.

-14-

An actual conflict of interest exists where there is "active competition between two interests, in which one interest can only be served at the expense of the other." *Johnson,* 312 B.R. at 822 (quoting *In re BH &P, Inc.,* 103 B.R. 556, 563 (Bankr.D.N.J. 1989), *aff'd,* 949 F.2d 1300 (3d Cir. 1991)(internal quotation marks omitted)). *See also In re Worldwide Wholesale Lumber, Inc.,* 364 B.R. 197, 203 (Bankr.D.S.C. 2006)(same). Similarly, a disqualifying interest adverse to the estate exists when the professional represents a client that "'hold[s] or assert[s] any economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual . . . dispute in which the estate is a rival claimant'" *Johnson,* 312 B.R. at 820 n. 8 (quoting *In re Dev't Corp. of Plymouth, Inc.,* 283 B.R. 464, 469 (Bankr.E.D.Mich. 2002)(citing *In re C.F. Holding Corp.,* 164 B.R. 799 (Bankr.D.Conn. 1994)(remaining citation omitted))); when the client "'possess[es] a predisposition under circumstances that render such predisposition a bias against the estate'" *Id.*; or when counsel's duty to one client "will color and influence, and materially limit, the advice" it gives to the other. *In re Git-N-Go,* 321 B.R. 54, 61 (Bankr.N.D.Okla. 2004)(citation omitted).

This Chapter 7 case is a contest between two rival claimants to substantially all of the assets of the estate: the FDIC as receiver for the failed bank, and Wilmington as indenture trustee. By retaining Wilmington-IT's counsel to advise the Trustee whether it is in the interests of the estate to engage in that fight and to represent the Trustee in litigation adverse to FDIC-R, the Trustee has chosen the interests of one rival claimant over the other by her choice of counsel. For this reason, this Chapter 7 case differs from a typical chapter 7 case in which the interests of the estate and a creditor holding a non-priority unsecured claim would be aligned in litigation to recover assets for the bankruptcy estate.

-15-

The only way Wilmington-IT can receive any distribution from the estate depends on the Trustee establishing that FDIC-R does not hold a priority claim. One strategy to defeat FDIC-R's priority claim is to defeat the claim in its entirety by avoiding the Debtor's obligation to FDIC-R as a fraudulent transfer.[12] If FDIC-R holds no claim at all, it has no priority claim. Wilmington-IT would then hold the only non-priority unsecured claim against the estate, with the only other claim of any type against the estate being the claim of NMTR, which is *di minimus* in the context of this case. On the other hand, if FIDC-R holds a valid priority claim, it will receive substantially all of the estate's assets and Wilmington-IT would receive nothing. Wilmington-IT therefore has an economic incentive for the estate to contest the priority of FDIC-R's claim by the prosecution of a fraudulent transfer claim against FDIC-R no matter how strong or weak the claim, and for the Trustee to vigorously prosecute the claim without regard to the cost of the litigation. This creates an actual conflict of interest.

C. The sequencing of the anticipated litigation creates an additional actual conflict for A&B

In administering the Debtor's bankruptcy estate, the Chapter 7 Trustee must decide whether to pursue a fraudulent transfer claim against FDIC-R or otherwise challenge its priority claim, and whether to pursue the Tax Refund Litigation. If she decides to pursue both matters, she must decide whether to litigate both matters simultaneously, or whether to challenge FDIC-R's priority claim first and pursue the Tax Refund only if the priority claim is disallowed. In doing so, she must exercise her reasonable business judgment[13] and consider the interests of both

---

[12]The Chapter 7 Trustee states that she may seek to avoid FDIC-R's capital maintenance claim as constructively fraudulent under 11 U.S.C. § 548. *See* Statement, p. 8. Although the Trustee has reserve the right to challenge the priority claim on any other basis, she has not presented any other possible ground to the Court.

[13]*See Myers v. Martin (In re Martin),* 91 F.3d 389, 394 (3rd Cir. 1996)(recognizing that a chapter 7 trustee "has the duty to maximize the value of the estate . . . and in so doing is bound to be vigilant and attentive in advancing [the estate's] interests.")(internal citations and quotation marks omitted); *In re Kester,* 339 B.R. 764, 771(Bankr.D.Kan. 2005), *aff'd on other grounds,* 339 B.R. 749 (10th Cir. BAP 2006)(finding that the chapter 7 trustee "satisfied his

Wilmington-IT and FDIC-R.  In open court the Trustee initially stated that she thought it makes sense for the FDIC-R priority claim to be determined first.  After further reflection and the opportunity to consult A&B she later decided that it may make more sense to challenge the priority claim and pursue the Tax Refund Litigation at the same time.

FDIC-R reasons that the Trustee should not incur substantial administrative expenses in Tax Refund Litigation before it is determined whether a ruling for the Trustee would benefit any creditor other than FDIC-R.  FDIC-R seeks to avoid a possible result under which it prevails on its priority claim and therefore is entitled to substantially all estate assets, less administrative expenses, but its recovery is substantially diluted by the Trustee's legal fees and her own fees with no benefit to any other creditor.   The Trustee has expressed a concern about possible years of delay in the ultimate distribution to creditors, as well as a statute of limitations risk,[14] if she is forced to await the ultimate outcome of the challenge to FDIC-R's priority claim before seeking recovery of the Tax Refund.

A&B has an actual conflict of interest in advising the Trustee with respect to the exercise of her business judgment in relation to how to sequence any priority claim and Tax Refund litigation.  Wilmington-IT has an economic interest in the Trustee challenging FDIC-R's priority claim and pursuing the Tax Refund at the same time to minimize delay in a possible distribution to it regardless of the effect on FDIC-R.  Because of that interest, A&B's duty to Wilmington-IT

---

duties by exercising astute business judgment in evaluating and administering the debtors' bankruptcy estate.");
*Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 812 (Bankr.N.D.Tex. 2009)(stating that a chapter 7 trustee "is expected to be a gatekeeper and to exercise reasonable business judgment in deciding what actions to bring and what are not worth the expense.").

[14] The Chapter 7 Trustee points out that the statute of limitations for filing certain claims on behalf of the estate expires in April of 2013. *See* Statement, p.4, n.2.  To the extent that the Tax Refund Litigation is limited to the question of whether such refunds constitute property of the bankruptcy estate, it appears that the limitations period set forth in 11 U.S.C. § 546 does not apply.  Section 541, which governs property of the estate, is not one of the Bankruptcy Code sections referenced in 11 U.S.C. § 546.  *See* 11 U.S.C. § 546 ("An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of . . . ").  The two-year statute of limitations found in 11 U.S.C. § 546 does apply to avoidance claims brought under 11 U.S.C. § 548. *Id*

would color and influence the advice it gives to the Chapter 7 Trustee. But she is free to retain other competent independent counsel to assist her in deciding how to proceed in this case.

D. Whether the prospect of the subordination of Wilmington-IT's claims creates a disqualifying conflict

FDIC-R also asserts that the Chapter 7 Trustee will be forced to take a position in the Tax Refund Litigation that will necessarily result in the subordination of Wilmington-IT's claims to other creditors of the bankruptcy estate, including the claim of FDIC-R, creating an actual conflict of interest that disqualifies A&B from simultaneously representing Wilmington-IT and the Chapter 7 Trustee. The indenture agreement that forms the basis of Wilmington-IT's claims includes a provision that subordinates debenture holders to "Senior Indebtedness" of the Debtor, which is defined to include indebtedness of the Debtor for borrowed money. [15]

The Chapter 7 Trustee has had almost two years to seek advice from independent counsel on whether to seek to subordinate Wilmington-IT's claims but has not yet done so. Under those circumstances, the Court will not consider whether the prospect of the Trustee seeking to subordinate Wilmington-IT's claim is sufficiently remote, as the Trustee urges, that it should be disregarded in connection with the Section 327(a) determination. Nevertheless, the Court need not decide whether the potential subordination of Wilmington-IT's claim poses a disqualifying conflict. The actual conflict that exists with respect to the matters for which the Chapter 7 Trustee seeks to employ A&B disqualifies A&B. Thus, regardless of whether the prospect of subordination of Wilmington-IT's claim created a conflict, that determination would not change the Court's decision.

_____

[15] *See, e.g.,* First State Bancorporation Indenture dated September 20, 2004, Sections 1.1 and 15.1, attached as Exhibit 1 to the Objection of the Federal Deposit Insurance Corporation, as Receiver for First Community Bank, to the Trustee's First Amended Application to Retain Alston & Bird LLP as Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327(a), (c), and 328(a)("FDIC-R's Objection") - Exhibit H.

-18-

E.  The Reasonableness of the Proposed Fee Arrangement Between the Trustee and A&B

After reviewing the proposed fee arrangement between the Chapter 7 Trustee and A &B, the Court finds that the hybrid fee arrangement is not reasonable.  Mr. Connolly's regular hourly rate is $875.00.  Mr. Edwards' regular hourly rate is $450.00.  Under the proposed hybrid fee arrangement, hourly rates would be discounted by 25%, and A&B would be entitled to a twenty-five percent contingency fee on any net recovery.[16]  The amount of the Tax Refund is estimated to be $1.8 million.  Mr. Connolly testified that if the Court approves the Trustee's retention of A&B it is anticipated that most of the time charged by the firm would be for Mr. Edwards' time.  Neither he nor the Trustee gave any estimate of a range of hours A&B would charge for its representation of the Trustee.  It appears to the Court that the main issue that would be raised in the Tax Refund Litigation, namely, whether the Tax Refund is property of the estate, is largely a legal question that very well might be resolved on summary judgment.

Given the estimated amount of the Tax Claim, the estate would be substantially better off retaining A&B on an hourly basis at the firm's full hourly rates than on the proposed hybrid discounted hourly rate/contingent fee basis.[17]  Under the proposed hybrid fee arrangement, the

---

[16] Under the fee agreement between A&B and the Trustee the contingent fee is earned not only on a monetary recovery by the estate but also on any other economic benefit to the estate resulting from A&B's efforts. Notwithstanding the Trustee's testimony regarding her understanding of the agreement, it is unclear whether A&B would earn a contingency fee on any economic benefit to the estate from disallowance of FDIC-R's priority claim or how that benefit would be measured.

[17] The following chart illustrates why, assuming, for illustrative purposes only, that 25% of the time was billed at Mr. Connolly's rate and 75% at Mr. Edwards' rate, and that a total of 300 hours were charged:

|  | Hourly at full hourly rates (regardless of whether claim is successful) | Hybrid hourly/ contingent fees (if claim is successful) | Hybrid hourly/ contingent fees (if claim is unsuccessful) |
|---|---|---|---|
| Hourly charge | $166,875.00 | $125,156.25 | $125,156.25 |
| Contingent fee charge (25% of 1.8 million) | $0.00 | $450,000.00 | $0.00 |
| **TOTAL** | $166,875.00 | $575,156.25 | $125,156.25 |

-19-

Chapter 7 Trustee would pay $408,281.25 of additional legal fees if the Tax Refund Litigation were successful in order to save $41,718.75 in legal fees under a full hourly rate fee arrangement in the event the Tax Refund Litigation were unsuccessful, assuming that 25% of the time was billed at Mr. Connolly's rate and 75% at Mr. Edwards' rate and that a total of 300 hours were charged. Using the same blended hourly rate assumption but assuming 200 or 400 hours of hours charged, the Chapter 7 Trustee would pay $408,281.25 of additional legal fees under the hybrid fee arrangement if the Tax Refund Litigation were successful in order to save $27,812.50 or $55,625, respectively, under a full hourly rate fee arrangement in the event the Tax Refund Litigation were unsuccessful. The Chapter 7 Trustee currently holds approximately $1 million in the bankruptcy estate from her liquidation of the Debtor's real property. Because there are funds in the bankruptcy estate from which special counsel could be paid its regular hourly rates, it is not reasonable for the Trustee to engage special counsel on the proposed hybrid contingent fee arrangement.

FDIC-R also objects to A&B's hourly rates. FDIC-R has retained competent national counsel experienced in litigating the type matters at issue in the Chapter 7 case to represent its interests in this Chapter 7 case. Taking into account the nature and complexity of the issues, efficiencies gained by retention of counsel with substantial experience litigating issues involving tax sharing and capital maintenance agreements in bankruptcy cases of bank holding companies, and A&B's high level of skill, the Court finds that if A&B did not have a disqualifying conflict, retention of A&B on a straight hourly basis at its regular hourly rates or on some other reasonable basis would have been approved.

---

These assumptions are not intended to suggest what amount of time would be reasonable or to what extent an attorney charging a lower rate should do the work.

CONCLUSION

Based on the foregoing, the Court concludes that, under the circumstances present in this case, A&B's simultaneous representation of Wilmington-IT and the Chapter 7 Trustee disqualifies A&B from representing the Chapter 7 Trustee as special counsel to litigate the priority of FDIC-R's claim and to pursue the Tax Refund. The Court will deny the Amended Application to Employ Alston & Bird. The Court will enter a separate order consistent with this Memorandum Opinion. The Court is aware of the limitations period imposed by 11 U.S.C. § 546. The Court will expedite the process for approval of the Trustee's retention of other counsel at her request.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 13, 2013

COPY TO:

Linda S. Bloom
Chapter 7 Trustee
PO Box 218
Albuquerque, NM 87103-0218

Chris W Pierce
Hunt & Davis, P.C.
Counsel for the Chapter 7 Trustee
2632 Mesilla St. NE
Albuquerque, NM 87110

Jeffery A. Sandell
Attorney for Federal Deposit Insurance Corporation
1601 Bryan St. 15th Floor
Dallas, TZ 75201

Joshua David Wayser
Attorney for Federal Deposit Insurance Corporation
Katten Muchin Roseman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067