**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:  FIRST STATE BANCORPORATION,                              No. 7-11-11916 JA

Debtor.

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on the following three fee applications:  1) Second
Application for Allowance of Compensation for Attorney for Trustee (Linda S. Bloom, P.A.)
("Bloom's Second Application") and Addendum to Second Application for Allowance of
Compensation for Attorney for Trustee (Linda S. Bloom PA) ("Bloom Addendum")[1] (Bloom's
Second Application and the Bloom Addendum together, the "Bloom Fee Application") (Docket
Nos. 181 and 189); 2) Third Application for Allowance and Payment of Compensation and
Reimbursement of Expenses and Costs ("Pierce Fee Application")(Docket No. 190); and 3) First
Interim Fee Application for Compensation and Reimbursement of Expenses by Kozyak Tropin
& Throckmorton, P.A. as Special Litigation Counsel for the Trustee ("KT&T Fee
Application")(Docket No. 193).  The Federal Deposit Insurance Company, as Receiver for First
Community Bank ("FDIC-R") objected to the Bloom Fee Application, the Pierce Fee
Application and The KT&T Fee Application.  *See* Docket Nos. 184, 192, 196, and 200.[2]  The

---

[1]Linda S. Bloom filed the Bloom Addendum in an effort to address FDIC-R's objection that some of the time entries
in Bloom's Second Application were "lumped."  FDIC-R objected to Ms. Bloom's submission of the Bloom
Addendum, arguing that Ms. Bloom should not be allowed to re-construct her time entries after the fact to break
down the components of lumped time entries.   At the final hearing, Ms. Bloom testified that she kept
contemporaneous time records and that she was able to discern from those records the amount of time spent on each
task contained in the lumped entries.   Based on this testimony, the Court will consider the Bloom Addendum
together with Bloom's Second Application.   FDIC-R's objection to Ms. Bloom's submission of the Bloom
Addendum is overruled.

[2]The FDIC-R filed the following objections to the three fee applications:
    1.   Objection to Second Application for Allowance of Compensation for Trustee (Linda S. Bloom, P.A.) –
        Docket No. 184 (Exhibit 2);

Court held final hearings on the three fee applications and took the applications under advisement.

Linda S. Bloom is the Chapter 7 Trustee in First State Bancorporation's Chapter 7 case (Linda S. Bloom in her capacity as Chapter 7 Trustee hereafter is called "Chapter 7 Trustee" or "Trustee"). She also serves as counsel for the Trustee.[3] Chris W. Pierce of Hunt & Davis, P.C. serves as general counsel for the Chapter 7 Trustee.[4] Corali Lopez-Castro and David A. Samole of Kozyak Tropin & Throckmorton, P.A. ("KT&T") serve as special litigation counsel for the Trustee.[5] One of the FDIC-R's primary objections to the three fee applications is the alleged duplication of services by Linda S. Bloom, P.A. (the "Bloom Firm") as attorney for the Trustee, Chris W. Pierce, as general counsel for the Trustee, and KT&T as special litigation counsel for the Trustee. To avoid a duplication of the Court's efforts, the Court will address all three fee applications in one Memorandum Opinion. As explained below, the Court will grant, in part, and deny, in part each of the three fee applications.

BACKGROUND AND PROCEDURAL HISTORY

First State Bancorporation filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 27, 2011. Linda S. Bloom was appointed as Chapter 7 Trustee. She filed an

---

2. Supplement to Objection of Federal Deposit Insurance Company, as Receiver for First Community Bank, To Second Application for Allowance of Compensation for Attorney for Trustee (Linda S. Bloom, P.A.) – Docket No. 192 (Exhibit 7);
3. Objection of Federal Deposit Insurance Company, as Receiver for First Community Bank, to Third Application of Hunt & Davis, P.C. (Chris W. Pierce) for Allowance and Payment of Compensation and Reimbursement of Fees and Costs – Docket No. 196 (Exhibit 11);
4. Objection of Federal Deposit Insurance Company, as Receiver for First Community Bank, to First Interim fee Application of Kozyak Tropin and Throckmorton, P.A., as Special Litigation Counsel for Trustee, for Compensation and Reimbursement of Expenses – Docket No. 200 (Exhibit 13).

[3] *See* Order Authorizing Employment of Attorney for Trustee (Linda S. Bloom, P.A.)("Bloom Employment Order") – Docket No. 9.

[4] *See* Order Approving Trustee's Application to Employ Counsel for the Trustee (Hunt & Davis, P.C.) ("Pierce Employment Order") – Docket No. 37.

[5] *See* Order Granting, In Part on Certain Conditions, and Denying, In Part, Trustee's Application for Employment of Kozyak Tropin & Throckmorton, P.A. as Special Litigation Counsel ("Special Counsel Employment Order") – Docket No. 170.

application to employ the Bloom Firm as counsel for the Trustee on April 28, 2011. *See* Docket No. 7. The Bloom Employment Order was entered the next day. *See* Docket No. 9. The Chapter 7 Trustee sought to employ Hunt & Davis, P.C. (Chris W. Pierce) as general counsel for the Chapter 7 Trustee on June 13, 2011. *See* Docket No. 30. The Pierce Employment Order was entered on July 12, 2011. *See* Docket No. 37. The Chapter 7 Trustee initially sought to employ Alston & Bird LLP as special litigation counsel to represent her in connection with potential tax refund litigation and litigation against FDIC-R. *See* Application to Retain Alston & Bird LLP as Special Litigation Counsel Pursuant to 11 U.S.C. § 327(a), (c), and 328(a) – Docket No. 44 and Trustee's First Amended Application to Retain Alston & Bird LLP as Special Litigation Counsel Pursuant to 11 U.S.C. § 327(a), (c), and 328(a) – Docket No. 119 (together, "Application to Employ Alston & Bird").

On March 6, 2013, the Court denied the Chapter 7 Trustee's Application to Employ Alston & Bird. *See* Docket No. 158. The Trustee then sought to employ KT&T as special litigation counsel. *See* Docket No. 159. The Special Counsel Employment Order was entered on March 28, 2013. *See* Docket No. 170. The applications to employ Hunt & Davis, P.C. and KT&T each represent that the attorneys will not duplicate work performed by other attorneys employed by the Trustee. *See* Application to Employ Counsel for Trustee (Hunt & Davis, P.C.) – Docket No. 30 ("Attorney will not duplicate any work performed by Linda S Bloom, P.A. in its capacity as attorney."); Trustee's Application for Employment of Kozyak Tropin & Throckmorton, P.A. as Special Litigation Counsel – Docket No. 159 ("The Trustee and the Firm will use their reasonable efforts to ensure that the services performed by the Firm will not duplicate or overlap with the services being performed by other professionals retained by the Trustee in this Chapter 7 Case.").

So far, the Court has approved the following compensation for the Bloom Firm as counsel for the Chapter 7 Trustee, and Hunt & Davis, P.C. as general counsel for the Chapter 7 Trustee:

| Applicant | Application | Time Period | Amount Approved |
|-----------|-------------|-------------|-----------------|
| Bloom | First Application for Compensation (Docket No. 109) | 4/29/11 to 7/17/12 | $21,810.80[6] |
| Pierce | First Application for Compensation (Docket 93) | 6/13/11 to 5/31/12 | $32,704.10[7] |
| | Second Application for Compensation (Docket 163) | 6/1/12 to 2/28/13 | $54,626.14[8] |
| | | **TOTAL:** | $109,141.04 |

The total of the compensation requested in the three pending fee applications is $181,963.45.[9]

Hunt & Davis, P.C. and the Bloom Firm each offered testimony in support of their respective fee applications.[10]   KT&T did not offer any testimonial evidence in support of its fee application.

---

[6] *See* Default Order Approving First Application for Allowance of Compensation for Attorney for Trustee (Linda S. Bloom P.A.) – Docket No. 113.

[7] *See* Default Order Granting Application for Allowance and Payment of Compensation and Reimbursement of Expenses and Costs – Docket No. 108.

[8] *See* Default Order Granting Second Application for Allowance and Payment of Compensation and Reimbursement of Expenses and Costs – Docket No. 172.

[9] The Bloom Fee Application requests approval of $12,160.02.  *See* Docket No. 181.  The Pierce Fee Application requests approval of $15,971.22. *See* Docket No. 190.  The KT&T Fee Application requests approval of $153,832.21. *See* Docket No. 193.

[10] Chris Pierce participated in the final hearing on the Bloom Fee Application by making oral argument and questioning Linda S. Bloom on the witness stand.  He also charged for time spent prior to the hearing assisting Ms. Bloom in responding to FDIC-R's objection to the Bloom Fee Application.  FDIC-R objects to Mr. Pierce's representation of Linda S. Bloom, P.A in connection with the Bloom Fee Application because Mr. Pierce represents Linda S. Bloom as Chapter 7 Trustee and does **not** represent her law firm, Linda S. Bloom, P.A.  An attorney may be compensated from the estate for preparing and defending a fee application.  *See* 11 U.S.C. § 330(a)(6)("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.");  *In re Smith,* 317 F.3d 918, 928  (9th Cir. 2002), *abrogated on other grounds by Lamie v. United States Trustee,* 540 U.S. 526, 531-39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)(observing that § 330(a) does not expressly forbid compensation for time spent litigating fee applications, and finding that compensation may be awarded for such services provided the applicant satisfies all of § 330(a)'s requirements); *In re Millennium Multiple Employer Welfare Benefit Plan,* 470 B.R. 203, 217 (Bankr.W.D.Okla. 2012)(noting a split in authority on the issue of whether fees incurred defending fee applications are compensable, and concluding that

Instead, counsel for KT&T made oral argument and relied on the KT&T Fee Application itself in support of its requested compensation.

FEE STANDARDS

A Chapter 7 case trustee may hire herself as counsel. *See In re Kusler,* 224 B.R. 180, 193 (Bankr.N.D.Okla. 1998)(trustees are not precluded from hiring their own firms to represent them). *See also,* 11 U.S.C. § 327(a)("the trustee . . . may employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title."). But it is not typical for a case trustee to employ herself as counsel and also to hire separate counsel as general counsel for the estate. Because the Chapter 7 Trustee in addition hired special litigation counsel, there are three law firms employed by the Chapter 7 Trustee.

Section 330 of the Bankruptcy Code governs compensation of professionals employed by the case trustee.[11] To be compensable, the amount of the requested attorneys' fees must be

---

"allowing fees for the defense of a fee application is consistent with the overall purpose of § 330 of the Bankruptcy Code, and provides a benefit to the bankruptcy estate and to the bankruptcy system.")(citation omitted). *But see In re Brous,* 370 B.R. 563, 572 (Bankr.S.D.N.Y. 2007)(pointing out that "[t]here is no parallel statutory requirement to defend against an objection to a fee application, or to receive compensation for the legal fees incurred in that defense[,]" and that some courts decline to award fees for defending a fee application if a good faith objector prevails). If the Bloom Firm employed more than one attorney, that attorney could have assisted Ms. Bloom with the hearing and the Bloom Firm could have charged for that other attorney's time. But here, Ms. Bloom is the only attorney in her firm. Mr. Pierce questioned Ms. Bloom on the witness stand so that Ms. Bloom would not have to provide a narrative testimony or pose questions to herself. Under these unique circumstances, the Court will allow Mr. Pierce to charge for his time assisting Ms. Bloom in defending the Bloom Fee Application notwithstanding the fact that he does not represent Linda S. Bloom, P.A. The potential impact on the estate is substantially the same as it would have been had Ms. Bloom and another attorney in her firm charged for their time in defending the Bloom Fee Application. Further, the estate has an interest in obtaining a just determination of the amount it should pay its professionals.

[11]Section 327(a) provides, in relevant part:
> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
> 11 U.S.C. § 327(a).

Section 330(a) provides, in relevant part:
> After notice . . . and a hearing . . . the court may award . . . a professional person employed under section 327 . . .
>> (A) reasonable compensation for actual, necessary services rendered by the . . . professional person . . . and by any paraprofessional person employed by any such person; and
>> (B) reimbursement for actual, necessary expenses.

5

reasonable, and the services provided must be actual and necessary. 11 U.S.C. §
330(a)(1)(A)("the court may award . . . a professional person employed under section 327 . . .
reasonable compensation for actual, necessary services . . ."). Expenses likewise must be actual
and necessary to be compensable from the estate. 11 U.S.C. § 330(a)(1)(B)("the court may
award . . . . reimbursement for actual, necessary expenses.").

"The most useful starting point for determining the amount of a reasonable fee is the
number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."
*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court must
consider the factors enumerated in 11 U.S.C. § 330(a)(3)[12] as well as the relevant *Johnson*
factors[13] to assess the reasonableness of requested compensation. *In re Market Center East
Retail Property, Inc.,* 730 F.3d 1239, 1250 (10th Cir. 2013)(holding that the bankruptcy court is
required to "properly consider the § 330(a)(3) and *Johnson* factors in evaluating whether the

---

11 U.S.C. § 330(a)(1).
[12]The § 330(a)(3) factors are:
    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were necessary to the administration of, or beneficial at the time at which the
service was rendered toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the
complexity, importance, and nature of the problem, issue, or task addressed;
    (E) with respect to a professional person, whether the person is board certified or otherwise has
demonstrated skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably
skilled practitioners in cases other than cases under this title.
    11 U.S.C. § 330(a)(3).
[13]The *Johnson* factors are:
    (1) The time and labor required.
    (2) The novelty and difficulty of the questions.
    (3) The skill requisite to perform the legal service properly.
    (4) The preclusion of other employment by the attorney due to acceptance of the case.
    (5) The customary fee.
    (6) Whether the fee is fixed or contingent.
    (7) Time limitations imposed by the client or the circumstances.
    (8) The amount involved and the results obtained.
    (9) The experience, reputation, and ability of the attorneys.
    (10) The "undesirability" of the case.
    (11) The nature and length of the professional relationship with the client.
    (12) Awards in similar cases.
    *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 – 719 (5th Cir. 1974).

6

compensation is reasonable."). *See also, In re Commercial Financial Services, Inc.,* 427 F.3d 804, 811 (10th Cir. 2005)(the determination of the reasonableness of a requested professional fee "takes into account each of the factors specifically mentioned in § 330(a)(3) plus additional relevant factors . . . [a]s articulated in *Johnson v. Georgia Highway Express, Inc.*").

Known as the adjusted "lodestar" method, this method of assessing the reasonableness of requested fees encompasses the factors that 11 U.S.C. § 330(a)(3) directs the Court to consider, and has long been applied in bankruptcy cases to professionals hired under 11 U.S.C. § 327(a).[14] The party seeking an award of compensation bears the burden of demonstrating that the services provided were actual and necessary and otherwise satisfy the requirements of 11 U.S.C. § 330. *See Commercial Fin.,* 427 F.3d at 811 ("The burden is on the party requesting fees to prove its request is reasonable."); *In re Berg,* 268 B.R. 250, 257 (Bankr.D.Mont. 2001)("The burden of proof to show entitlement to all fees requested from the estate is on the applicant.")(citation omitted). The Court may award less compensation than requested. 11 U.S.C. § 330(a)(2).

"Lumping" of time entries where multiple tasks are described and associated with one block of time, without an allocation of time for each entry, is generally insufficient to satisfy the requirements of 11 U.S.C. § 330. *See In re Recycling Indus., Inc.,* 243 B.R. 386, 406 (Bankr.D.Colo. 2000)(noting that "'['lumping' is a] practice universally disapproved by the bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether the individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which

---

[14]*See Market Center,* 730 F.3d at 1246 ("In this circuit, the adjusted lodestar approach is used to calculate reasonable attorney's fees under 11 U.S.C. § 330(a).")(citing *Commercial Fin.,* 427 F.3d at 811); *In re Miniscribe, Corp.* 309 F.3d 1234, 1244 (10th Cir. 2002)(noting that the Tenth Circuit "has long applied the *Johnson* lodestar factors to assess 'reasonableness' of attorney's fees in a variety of contexts . . . and has also specifically determined that the test applies to attorney fee determinations under § 330(a)(1)")(citation omitted).

have been lumped together.'")(quoting *In re Leonard Jed Co.,* 103 B.R. 706, 713 (Bankr.D.Md. 1989), *amended by* 118 B.R. 338 (Bankr.D.Md. 1990), *on reconsideration,* 118 B.R. 339 (Bankr.D.Md. 1990)).[15]  On the other hand, the Court is mindful that the general prohibition against "lumping" should not be used "to inflict upon counsel unreasonable and unrealistic billing record requirements" to itemize each and every possible severable task in a separate time entry.  *In re Reconversion Technologies, Inc.,* 216 B.R. 46, 58 (Bankr.N.D.Okla. 1997).

An attorney requesting compensation must exercise billing judgment to ensure that the compensation requested is actual and necessary.  *See In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 486 (Bankr.D.Utah 1991)("The standard of section 330 that compensation be for actual and necessary services makes the exercise of 'billing judgment' a mandatory requirement in bankruptcy fee matters.")(citation omitted); *Reconversion Tech.,* 216 B.R. at 57 (applying to bankruptcy cases the billing judgment principles set forth in *Hensley v. Eckerhart,* 461 U.S. at 434, which require counsel to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.").  Not all work performed by an attorney whose employment has been approved is compensable simply by virtue of the fact that the attorney has actually performed the work.  The Court will disallow fees resulting from excessive time spent to complete a task.  *See In re Vista Foods USA, Inc.,* 234 B.R. 121, 130 (Bankr.W.D.Okla. 1999)("services found to be excessive, redundant, or unnecessary are not compensable.")(citing *Hensley,* 461 U.S. at 434).

In addition, compensation will not be awarded for "unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i).  The risk of duplication of services is particularly great where there

---

[15]*See also, In re Fincher,* 2012 WL 1155719, *7 (Bankr.D.N.M. Apr. 5, 2012)(noting that "'[l]umping of tasks into one time entry does not appear to comply with the requirements of NM-LBR 2016-1.'" and stating further that "[l]umping of time entries . . .is particularly inappropriate in the bankruptcy context because it impedes the Court's ability to assess the reasonableness of the time expended to perform each task.")(citation omitted).

are three law firms employed by the Chapter 7 Trustee, and two of those firms are employed as general counsel. *Cf. Brous,* 370 B.R. at 573 (disallowing compensation to trustee's general counsel where the services performed duplicated the services performed by special counsel); *In re Stevens,* 407 B.R. 303, 309 (Bankr.N.D.Ill. 2009)(trustee who employed her own firm as well as other, independent attorneys as special counsel and as general counsel, was not entitled to compensation for services by her own firm that unnecessarily duplicated the services of special counsel).

When a Chapter 7 Trustee hires her own firm as counsel for the Chapter 7 Trustee there is an inherent risk that the firm may charge for work that generally would be performed by the Chapter 7 Trustee in her capacity as trustee. *See Kusler,* 224 B.R. at 192 (observing that "[t]he trustee who hires his or her own firm as counsel is at a disadvantage as he or she reviews the professional fees sought by his or her own firm. Many times the tasks at issue have been performed by the trustee . . .").[16] Section 328(b) makes clear that a case trustee authorized to serve as an attorney for the estate may be compensated "only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without assistance of an attorney . . . for the estate." 11 U.S.C. § 328(b). *See also, In re Garcia,* 335 B.R. 717, 725 (9th Cir. BAP 2005)("Section 328(b) provides that an attorney or accountant may not receive compensation for the performance of any trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant.")(citation omitted). Counsel for a Chapter 7 Trustee may not be compensated for performing the trustee's statutory duties. *See, In re Virissimo,* 354 B.R.

---

[16]*See also, In re Kurtzman,* 220 B.R. 801, 804 (Bankr.S.D.N.Y. 1998), *aff'd,* 220 B.R. 538 (S.D.N.Y. 1998)(observing that, "[s]ince a bankruptcy trustee is responsible for monitoring all fees requested in a case, and has a statutory duty to object to any inappropriate fees, a conflict develops when the trustee's own law firm is retained as his counsel . . . ")(citation omitted).

9

284, 289 (Bankr.D.Nev. 2006)("The roles of trustee and attorney are distinct . . . and 11 U.S.C. §

328(b) prohibits an attorney-trustee from being paid for performing the statutory duties of a

trustee.")(citation omitted); *Kusler,* 224 B.R. at 193 ("The trustee is not entitled to compensation

as an attorney for services 'which can and should be performed by the trustee.'")(quoting

*Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 458 (D.Utah 1998)(citation omitted));

*Stevens,* 407 B.R. at 308 ("the threshold issue, posed by section 328(b), is whether professional

services performed by an attorney for the trustee were required to be performed by a lawyer or

were instead within the scope of the trustee's duties."); *In re Polk,* 215 B.R. 250, 253

(Bankr.M.D.Fla. 1997)("The statutory duties of the trustee are noncompensable as professional

time if performed by the trustee's attorney.")(citation omitted). Compensable services provided

by a trustee-attorney are restricted to those services that "can be performed legally only with a

law license." *Virissimo,* 354 B.R. at 290. With these standards in mind, the Court will address

each of the three fee applications. The Court has considered and applied each of the section

330(a)(3) factors and the relevant *Johnson* factors in relation to each of the three fee applications

before the Court.

A.  Bloom Fee Application

The Bloom Application seeks allowance and payment of compensation for the period

from July 18, 2012 to June 30, 2013 in the total amount of $12,160.02 consisting of:  1) fees in

the amount of 11,186.00; 2) costs in the amount of $178.50; and 3) tax on fees and costs in the

amount of $ 795.52.  Ms. Bloom's hourly rate charged in the Bloom Application is $235.00.

FDIC-R did not object to Ms. Bloom's hourly rate and the Court finds such rate reasonable.[17]

---

[17]Section 330(a)(3)(F) directs the court to consider "the customary compensation charged by comparably skilled
practitioners in cases other than cases under this title" when assessing the reasonableness of the requested hourly
rate.  The reasonableness of a requested hourly rate falls within the Court's discretion, and the Court can rely on its
own experience and knowledge of customary hourly rates to establish a reasonable hourly rate.  *See Smith v.*

Upon review of the Bloom Fee Application, the Court finds that compensation for the following services will be disallowed because the services constitute non-attorney work that should be performed by the trustee as part of her regular trustee duties:

| Date | Description | Time | Amount Disallowed |
|---|---|---|---|
| 08/09/12 | Re FDX sale – emails to title company | .2 | $47.00 |
| 09/13/12 | Conference CPA re consolidated return issues | .2 | $47.00 |
| 09/13/12 | Telephone conference with IRS re refunds | .1 | $23.50 |
| 10/23/12 | Submit order re 2nd fee application[18] | .1 | $23.50 |
| 11/07/12 | Email attorney Pierce re Amended Application to employ special counsel | .1 | $23.50 |
| 02/06/13 | Review FDIC proof of claim re "undetermined" claims[19] | .2 | $47.00 |
| 02/20/13 | Draft motion and order re blanket bond payment | .5 | $117.50 |
| 02/20/13 | Email UST re bond order[20] | .1 | $23.50 |

*Freeman,* 921 F.2d 1120, 1122 (10th Cir. 1990)(noting that "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area" (citations and internal quotation marks omitted), and that "[a] district judge . . . may also 'turn to her own knowledge' to supplement the evidence.")(quoting *Bee v. Greaves,* 910 F.2d 686, 689 n.4 (10th Cir. 1990)); *Recycling Indus.,* 243 B.R. at 404 n. 6 (noting that when there is no evidence of prevailing market rates, the court " may use other relevant factors, including its own knowledge, to establish the rate.")(citation omitted). *See also, Vista Foods,* 234 B.R. at    128 n.20 (whether a requested hourly rate is reasonable falls within the court's discretion and should be based on the current case and prevailing rates)(citing *Smith v. Freeman,* 921 F.2d at 1122).
[18]This service also appears to constitute non-legal clerical work. Clerical tasks are generally not compensable from the bankruptcy estate. *See In re Wheeler,* 439 B.R. 107, 110 (Bankr.E.D.Mich. 2010)("Clerical services should not be billed separately to clients, but should be included in the office overhead.")(citation omitted); *CF & I Fabricators,* 131 B.R. at 489 (stating that "[i]f clerical or secretarial services shift to the paraprofessional, the service is overhead and is not a reasonable charge to the estate.").
[19]Under 11 U.S.C. § 704(a)(5), a chapter 7 trustee is charged with examining proofs of claims. *See* 11 U.S.C. § 704(a)(5)("The trustee shall – if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper.").

Case 11-11916-j7    Doc 232    Filed 03/24/14    Entered 03/24/14 14:48:17 Page 11 of 31

| 03/11/13 | Telephone conference with law firms re employment of special counsel re FDIC issues | .1 | $23.50 |
|---|---|---|---|
| | | **TOTAL:** | $376.00 |

Ms. Bloom also billed one hour of her time to "review and revise settlement documents" in connection with the "FDX sale." *See* Bloom Fee Application – Time Entry on 08/09/12. The review of settlement documents in connection with a Chapter 7 Trustee's sale of property can fall within the trustee's regular duties. *Cf. Virissimo,* 354 B.R. at 295 (finding that communicating with the realtor and opposing counsel about the sale of real property, and reviewing a title report fell within the scope of regular trustee duties, absent a description in the fee application of attendant legal issues that would require the services of an attorney). But where the assistance of an attorney is required to complete the task, the time spent is compensable provided the requested compensation is reasonable and necessary. *See, Virissimo,* 354 B.R. at 290 (observing that "[t]he role of counsel for the trustee . . . is to perform those tasks that require special expertise beyond that expected of an ordinary trustee[,]" and acknowledging that "[l]aw practice is not limited to conducting litigation, but includes the preparation of documents requiring the use of legal knowledge or skill.")(citation omitted).

Here, Ms. Bloom testified that there were questionable title issues relating to the sale and that the work she performed included preparation of transactional documentation for the sale. The Court accepts this testimony as sufficient supporting evidence that the work performed under the description "review and revise settlement documents" required the use of legal skills outside the scope of a trustee's ordinary duties.

---

[20] This service also appears to constitute non-legal clerical work.

FDIC-R also asserts that the Bloom Firm spent excessive time preparing the Bloom Fee Application. This Court agrees. The Bloom Fee Application is a three-page document that Ms. Bloom billed 2.5 hours to prepare, and appears to be largely based on a form. *See* Bloom Fee Application – time entry on 6/25/13. The Court will cut 1.5 hours of the time requested to prepare the Bloom Fee Application and disallow $352.50.

With respect to the time spent preparing the second fee application for the accountants employed by the Chapter 7 Trustee, the Court finds that compensation is appropriate as requested. FDIC-R points out that the Chapter 7 Trustee has not been hired as the attorney for the accountants. But in preparing the accountants' fee application, Ms. Bloom performed a legal service for which a professional employed by the estate may be compensated. Accountants who do not regularly provide services in connection with bankruptcy cases would not be familiar with the requirements for filing a fee application in a bankruptcy case. There is no evidence before the Court that the accountants also charged for preparing their fee application. It is in the estate's interest to provide counsel to assist professionals who do not regularly perform services in bankruptcy cases with employment and fee applications. Otherwise, the estate may have to pay other professionals to perform those services at a much greater cost to the estate. Further, requiring all non-bankruptcy attorney professionals to retain their own counsel in connection with employment and fee applications could impact the ability of the estate to retain competent professionals at a reasonable cost. It is not inappropriate for the Chapter 7 Trustee's counsel to complete that work and seek compensation for it as part of counsel's own fee application.

FDIC-R also complains that Ms. Bloom improperly charged for responding to FDIC-R's discovery requests in connection with the application to employ Alston and Bird, LLC as special

litigation counsel.[21]  FDIC-R characterizes this work as the duty of a party litigant to respond to

an opposing party's discovery requests.   The Court agrees that work by a Chapter 7 trustee to

gather responsive documents as part of the discovery process would not constitute compensable

legal work.  Consequently, the Court will disallow compensation in the amount of $658.00 for

work described as "responding FDIC discovery re employment of special counsel" on August

11, 2012.  It is not possible to discern from this description that the work performed required the

use of legal services.   Nor is Ms. Bloom's testimony that she was required to conduct legal

research and respond to legal issues raised by the discovery requests sufficient to explain why

that time entry describes legal work.   Two other time entries in this category do appear to

describe legal work.  *See* n. 19 below, items 2 and 3.  Unless such work unnecessarily duplicates

services by another professional employed by the Chapter 7 Trustee, the Court finds that the

work described in the time entries on January 23, 2013 and February 6, 2013 constitutes

compensable legal services.

The possible duplication of services among the attorneys hired to represent the Chapter 7

Trustee raises some serious concerns.  Because the Chapter 7 Trustee hired not only the Bloom

Firm as general bankruptcy counsel, but also hired Davis & Hunt, P.C. as general bankruptcy

counsel, she must give particular care to clearly define the legal services that she will perform for

the Trustee as the sole lawyer employed by the Bloom Firm and the legal services that her other

---

[21]FDIC-R objected to the following time entries:

|   | Date | Description | Time | Amount |
|---|------|-------------|------|--------|
| 1 | 08/11/12 | Responding FDIC discovery reemployment of special counsel | 2.8 | $658.00 |
| 2 | 01/23/13 | Research attorney work product re privilege log  [FDIC also contends this is duplicative of H & D work] | 2.5 | $587.50 |
| 3 | 02/06/13 | Research duty to supplement discovery responses | 1.4 | $329.00 |

Case 11-11916-j7    Doc 232    Filed 03/24/14    Entered 03/24/14 14:48:17 Page 14 of 31

general counsel and her special counsel will perform in order to minimize the inefficient duplication of efforts.  Ms. Bloom testified in conclusory terms that she and Mr. Pierce divided their tasks and did not duplicate work even though they both performed legal research with respect to the tax refund and other issues involving the FDIC-R.   This testimony is insufficient to establish that no improper duplication of work occurred.  Some of the descriptions of work in the Bloom Fee Application appear to overlap work performed and charged by Mr. Pierce.[22]  The evidence does not adequately explain how such work differed.  All three firms participated in the preparation of KT&T's employment application.[23]  After hiring Hunt & Davis, P.C. as her general counsel, Ms. Bloom, as the Chapter 7 Trustee, became Hunt & Davis, P.C.'s client.   It is not appropriate for Ms. Bloom to charge fees as an attorney for conferences with Mr. Pierce where his firm was acting as general counsel for the Chapter 7 Trustee.  After reviewing the

---

[22] For example:

| Bloom Fee Application | Date | Pierce Fee Application | Date |
|---|---|---|---|
| Research fraudulent transfer claim v. FDIC (2.8) | 03/11/13 | Legal research and review of case law regarding FDIC priority claim, 548 actions, grounds, elements, capital maintenance claims, defenses (1.2) | 03/01/13 |
| Research, review documents re: capital maintenance claim of FDIC (1.8) | 03/13/13 | Continued review of FDIC POC, legal research for capital maintenance claim, 548 defense, bank united opinion (.3) | 03/12/13 |

Other time descriptions in the Bloom Fee Application appear to duplicate work completed by Mr. Pierce for which he has already been compensated as part of his Second Application for Compensation.   For example:

| Bloom Fee Application | Date | Hunt and Davis, P.C.'s Second Application for Compensation | Date |
|---|---|---|---|
| Legal analysis re work product (1.0) | 01/23/13 | Legal research for attorney work product immunity | 01/16/13 |
| Review cases re FDIC claims (2.8) | 02/04/13 | Legal research for all cases cited by FDIC in original and amended objection | 02/04/13 |

[23]

| Bloom Fee Application | Pierce Fee Application | KT&T Fee Application |
|---|---|---|
| Revise Trustee amended Application to employ special counsel and declaration (.80) | E-mails (3X) (.3) to employ Kozyak, Tropin and Throckmorton; Review and Revise Application, Review Court's Opinion, Prepare Application for Filing (1.2) | Per comments from Trustee, revise and supplement retention application and affidavit and review and incorporate further comments and work with trustee's counsel finalize and have filed (1.5)  Review and revise retention papers (.4) |

15

Bloom Fee Application, the Pierce Fee Application, and the KT&T Application, the Court finds that, to a certain degree, Ms. Bloom has not carried her burden to show that her work did not duplicate work the services of other professionals retained to represent the Chapter 7 Trustee. For example, the Trustee did not identify any differences in the tax, fraudulent transfer, discovery, or FDIC-R claim issues that she and Hunt & Davis, P.C. researched.

Because Ms. Bloom is also the Chapter 7 Trustee who hired all three law firms, she is ultimately responsible to ensure that tasks are assigned and completed efficiently. This is not to say that it is never appropriate for more than one attorney or more than one law firm to work on a particular matter. *Cf. In re Trailer Source, Inc.,* 474 B.R. 846, 852 (Bankr.M.D. Tenn. 2012)(finding that trustee's service as co-counsel with special counsel for the trustee was not unreasonable nor duplicative, pointing out that the opposing parties often each had two or three attorneys working on the case). But where multiple law firms all work on some of the same matters, the requested fees will be carefully scrutinized to ensure that compensation is not allowed for an "unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i).

The Court will discount the following portions of Ms. Bloom's requested fees to adjust for the apparent unnecessary duplication of services:

| Date | Description | Time | Amount Requested | Amount Disallowed |
|------|-------------|------|------------------|-------------------|
| 11/07/12 | Revise Trustee amended Application to employ special counsel and declaration | .8 | $188.00 | $94.00 |
| 01/03/13 | Research re FDIC/tax refund issues | 2.4 | $564.00 | $282.00 |
| 01/23/13 | Telephone conference with Trustee Attorney re work product motion to compel | .2 | $47.00 | $47.00 |
| 01/23/13 | Legal analysis re work product | 1.0 | $235.00 | $117.50 |

16

| | | | | |
|---|---|---|---|---|
| 01/24/13 | Research FDIC tax refund, POC issue; review similar cases other court rulings | 4.8 | $1,128.00 | $564.00 |
| 01/24/13 | Research privilege, discovery issues re Alston & Bird employ, review file docs re same | 1.6 | $376.00 | $188.00 |
| 01/28/13 | Review court order re FDIC motion to compel, analysis re discovery issues | .8 | $188.00 | $94.00 |
| 02/04/13 | Review cases re FDIC claims | 2.8 | $658.00 | $329.00 |
| 02/06/13 | Research and analysis re FDIC priority and other claims | 2.6 | $611.00 | $305.50 |
| 02/06/13 | Research BK rules re limitations period on avoidance actions | 1.3 | $305.00 | $152.75 |
| 03/07/13 | Research Capital Maintenance priority claim/FDIC and document review re same | 2.6 | $611.00 | $305.50 |
| 03/11/13 | Research fraudulent transfer claim v. FDIC | 2.8 | $611.00 | $305.50 |
| 03/11/13 | Analysis re FDIC issues re employ employment special counsel | 2.0 | $470.00 | $235.00 |
| 03/13/13 | Research review documents re Capital Maintenance Claim of FDIC | 1.8 | $423.00 | $211.50 |
| 03/14/13 | Review and revise Kozyak Tropin & Throckmorton employment application, 2014 stmt, and notice | 1.8 | $423.00 | $423.00 |
| | | | **TOTAL:** | $3,654.25 |

Based on the foregoing, the Court will disallow from the Bloom Fee Application a total of $5,040.75, plus applicable gross receipts taxes on that amount. The balance of the requested fees and all of the requested expenses, plus applicable New Mexico gross receipts taxes, in the Bloom Fee Application are allowed.

B. Pierce Fee Application

The Pierce Fee Application seeks allowance and payment of compensation for the period from March 1, 2013 to September 12, 2013 in the total amount of $15,971.22 consisting of: fees in the amount of $14,827.50; 2) expenses in the amount of $101.76; and 3) taxes in the amount of $1,037.93. At the final hearing on the Pierce Fee Application, Mr. Pierce testified that he was

17

required to research the tax refund and capital maintenance guaranty issues involving FDICI-R because it was not clear whether the Chapter 7 Trustee would be able to employ special counsel to assist her with that task. The Chapter 7 Trustee's first attempt to hire special counsel was unsuccessful. At the time the Court denied the application to employ Alston & Bird, the Chapter 7 Trustee was faced with a fast-approaching expiration of a statute of limitations period. Chris Pierce testified that because the special counsel had not been approved, he was required to research the Chapter 7 Trustee's potential claims for which she sought special counsel to represent her. Once KT&T's employment was approved, Mr. Pierce brought KT&T up to speed with the issues relating to those potential claims and counseled KT&T with respect to local procedures and practices. KT&T filed its Complaint for Avoidance of Fraudulent Conveyance and Objection to Claim No. 9-2 on April 26, 2013. *See* Adversary Proceeding No. 13-1033 – Docket No. 1. After that time, it was not appropriate for Mr. Pierce to provide legal services on the same matters for which KT&T was hired to serve as special litigation counsel except to the extent Mr. Pierce provided guidance to KT&T with respect to local practices. To continue working on matters that KT&T was retained to handle caused an unreasonable duplication of services contrary to the requirements of 11 U.S.C. § 330.

The Court will disallow the following amounts requested in the Pierce Fee Application, totaling $2002.50, for the reasons stated:

| Date | Description | Time | Amount | Amount Disallowed | Reason for Disallowance |
|------|-------------|------|--------|-------------------|-------------------------|
| 04/29/13 | Review filed complaint; e-mails with C. Lopez-Castro regarding Judge Code, procedure | .5 | $112.50 | $67.50 | (.3) Lumping; review of filed complaint is unnecessary service |
| 06/10/13 | e-mails with L. Bloom, David Samole regarding FDIC motion to dismiss, response; | .9 | $202.50 | $202.50 | Duplication; unnecessary service |

| | | | | |
|---|---|---|---|---|
| | telephone conference with trustee regarding same and review motion | | | | |
| 06/11/13 | e-mails (7x) L. Bloom, D. Samole regarding IRS refunds, claims procedures, FDIC Motion to Dismiss, Responses Hearings | 1.10 | $247.50 | $123.75 | Duplication; Motion to dismiss is a special counsel task |
| 06/12/13 | Conference with client regarding hearing, motion to dismiss IRS issues | .5 | $112.50 | $112.50 | Duplication; Unnecessary service |
| 06/19/13 | Conference with L. Bloom regarding FDIC motion to dismiss, tax refund status, hearing on scheduling | .5 | $112.50 | $56.25 | Duplication; unnecessary service; Motion to Dismiss is a special counsel task |
| 06/20/13 | Emails with client, D. Samole regarding hearing on August 12, motion to dismiss scheduling conference | .3 | $67.50 | $67.50 | Duplication; unnecessary service |
| 06/21/13 | Prepare for and telephonic appearance at scheduling conference | .6 | $135.00 | $135.00 | Duplication; unnecessary service |
| 6/24/13 | Emails with client, D. Samole regarding hearing on motion to dismiss; review court docket minutes regarding adversary proceeding, review motion to dismiss, case law regarding same | .8 | $180.00 | $180.00 | Duplication; unnecessary service |
| 06/25/13 | Review scheduling notice regarding adversary, e-mails with client regarding same | .2 | $45.00 | $45.00 | Duplication; unnecessary service |
| 06/28/13 | Conference with client regarding motion to dismiss, status of response, hearing, tax refund, Mr. C De Baca Letter | .5 | $112.50 | $112.50 | Duplication; unnecessary service |
| 07/03/13 | Conference with Trustee regarding . . . status of FDIC Motion to Dismiss Hearing | .7 | $157.50 | $45.00 | Duplication; unnecessary service – disallow .2 |
| 07/10/13 | e-mails with D. Samole, C. Lopez-Castro regarding draft of response to FDIC Motion to Dismiss (.3); Review same, | .9 | $202.50 | $202.50 | Duplication; unnecessary service |

| | | | | | |
|---|---|---|---|---|---|
| | file, motion, review case law, format (.6) | | | | |
| 07/12/13 | Review e-mails from Corali Lopez-Castro, FDIC regarding Scheduling Order, Conference with Trustee regarding Scheduling, hearing, motion to dismiss response | .4 | $90.00 | $90.00 | Duplication; unnecessary service |
| 07/15/13 | e-mails with D. Samole, L. Bloom regarding filed brief, scheduling, hearing (.2); review brief case law on response to motion to dismiss (.2) | .4 | $90.00 | $90.00 | Duplication; unnecessary service |
| 07/19/13 | Conference with client regarding filed response to FDIC's motion to dismiss, case law on transfers, fraudulent transfers, defenses, issues regarding IRS refunds, status | .6 | $135.00 | $135.00 | Duplication; unnecessary service |
| 07/30/13 | Review FDIC reply brief on motion to dismiss, objection to Trustee's Fee Application (.4); e-mails (5X) with David Samole, Linda Bloom regarding same, response to Fee App. Objection, hearing, Case law on Motion to Dismiss (.5) | .9 | $202.50 | $202.50 | Duplication; unnecessary service |
| 07/31/13 | Conference with client regarding FDIC reply, hearing on motion to dismiss, FDIC objection to Fee App, Hearing defense, settlement | .6 | $135.00 | $135.00 | Duplication; Unnecessary Service |
| | | | | **TOTAL:** | **$2,002.50** |

The balance of the requested fees and all of the requested expenses, plus applicable New Mexico gross receipts taxes, in the Pierce Fee Application are allowed.

C.  KT&T Fee Application

The KT&T seeks allowance and payment of compensation for the period from March 15, 2013 through September 30, 2013 in the total amount of $153,832.21 consisting of:  1) fees in

20

the amount of $143,182.00; and 2) expenses in the amount of $10,650.21. The hourly rates of the attorneys who worked on the case range from $275.00 to $495.00. FDIC-R did not object to the reasonableness of the hourly rates charged by KT&T. The Court finds that such rates are reasonable.[24] FDIC-R objected to the KT&T Fee Application on the following grounds: 1) impermissible duplication of services performed by Hunt & Davis, P.C. and among attorneys within KT&T; 2) performance of non-legal work; and 3) vague task descriptions.

Some of FDIC-R's duplication objections target conferences between Chris Pierce of Hunt & Davis, P.C. and attorneys at KT&T. Mr. Pierce helped bring KT&T up to speed with respect to the issues for which KT&T was retained to represent the Chapter 7 Trustee. It is not unreasonable for Hunt & Davis, P.C. and KT&T each to charge for those conferences, provided the time spent is not excessive. Mr. Pierce was relaying important information and knowledge to the attorneys at KT&T, and the attorneys at KT&T were receiving such information and contributing their own experience and knowledge to the exchange of information. With respect to the alleged duplication of services among attorneys employed by KT&T, the Court finds that some reduction in fees is appropriate. The billing statements attached to the KT&T Fee Application reflect that David Samole is a partner at KT&T and Corali Castro-Lopez is a senior partner at KT&T. Both Mr. Samole and Ms. Castro-Lopez worked on some of the same matters. KT&T presented no testimony in support of the KT&T Fee Application, instead choosing to rely solely on the KT&T Fee Application itself to establish the reasonableness and necessity of its requested compensation. Absent evidence of how and why KT&T divided tasks among its attorneys, why it was appropriate for one partner to routinely review and revise another partner's

[24]The Court acknowledges that the rates charged by KT&T are high compared with customary rates charged by attorneys who live and practice in New Mexico, but finds, based on its own experience, that KT&T's hourly rates are not out of line with rates regularly charged for attorneys of comparable skill performing work of similar complexity employed by out of state law firms in larger cities. The Court also determines that it was appropriate for the Trustee to retain counsel at such rates on the matters for which she retained KT&T.

work, and why it was necessary for both partners to attend and bill for their appearance at hearings, the Court finds that a portion of the requested fees must be disallowed.

Attached as Exhibit A is a chart summarizing the work performed by KT&T attorneys in connection with FDIC-R's first motion to dismiss ("Fee Summary Chart").[25]  The Fee Summary Chart reveals that KT&T spent a total of 131.6 hours at a cost of $50,593.50 in responding to FDIC-R's Motion to Dismiss Count I of the Trustee's Complaint ("FDIC-R's Motion to Dismiss").  This is a significant portion of the total compensation requested in the KT&T Fee Application.  Except for the time spent preparing case summaries and a portion of the travel time, the Court finds that most of the time spent in connection with FDIC-R's is reasonable and necessary.

Though Ms. Castro-Lopez stated in argument that the case summaries were extremely helpful to her in preparing for the oral argument on FDIC-R's motion to dismiss, her argument is not the equivalent of testimony.  Based solely on the time entries described in the KT&T Fee Application for this work, the Court's familiarity with the briefs filed by the parties, the relevant case law, and the nature and complexity of the issues, the Court finds that the time spent preparing case summaries was excessive.   The Court will reduce the 32.8 hours spent preparing case summaries by one-third.   In addition, both Mr. Samole and Ms. Castro traveled to Albuquerque for the oral argument on FDIC-R's first motion to dismiss.  Yet, Mr. Samole did not present any argument to the Court at the hearing.   Mr. Samole billed 10 hours for time spent travelling to Albuquerque, including time preparing Ms. Castro-Lopez for the hearing, and 10 hours for the return trip, including 2.4 hours attending the final hearing.    Ms. Castro-Lopez

---

[25]The Court created the Fee Summary Chart based on its review of the bills attached to the KT&T Fee Application. Its purpose is to give a general approximation of the total time spent by the attorneys at KT&T completing certain categories of tasks.  The summary reflects the dates for actual time entries, but is not intended to be a comprehensive summary of all the time entries that relate to each of the Court's categories of work.  In some instances, the Court had to make an educated guess based on the description whether to include the time in the summary.

likewise billed 20 hours of time in connection with her participation in person at the final hearing on FDIC-R's first motion to dismiss. *See* Fee Summary Chart. Travel time may be compensable, especially where an attorney performs work during travel.[26] But here, Mr. Samole did not actively participate at the final hearing, Ms. Castro-Lopez was armed with extensive case summaries, and there is no evidence why Mr. Samole's appearance at the oral argument was necessary. Each attorney billed ten hours per day in connection with the oral argument, including travel time, for a total of 40 hours at a total cost of $17,900.00. The Court finds that some reduction in compensation for this work is appropriate.

Upon review of the KT&T Fee Application, the Court will disallow the following amounts for the reasons stated:

| Date | Description | Time | Amount | Amount Disallowed | Reason for Disallowance |
|---|---|---|---|---|---|
| 03/18/13 | Review and revise retention papers (CLC) | .4 | $190.00 | $190.00 | unnecessary duplication of work performed by DAS |
| 03/18/13 | Leave voice mail for J. Sandell (CLC) | .1 | $ 49.50 | $49.50 | Clerical/non-billable |
| 03/19/13 | Review emails and respond. Review court's opinion and other documents (CLC) | .8 | $380.00 | $148.50 | Lumped time - cut by .3 |
| 03/21/13 | Receive and review responsive correspondence from Mr. Pierce to FDIC counsel on retention issues and pending settlement discussions and related matters and follow up regarding same. (DAS) | .2 | $80.00 | $80.00 | Unnecessary duplication of work performed by CLC |
| 03/22/13 | Review emails re: new matter and confer with D. | .8 | $160.00 | $80.00 | Lumped time/clerical work – |

[26]*See, In re Babcock & Wilcox Co.,* 526 F.3d 824, 828 (5th Cir. 2008)(observing that some bankruptcy courts allow attorneys to charge their full hourly rate "for travel time that is necessary pursuant to § 330" while many other courts "discount non-working (and even working) travel time.")(citations omitted). The rationale for allowing an attorney to bill the full hourly rate for travel time is that "a lawyer travel[ing] for one client . . . incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir. 1984).

| | | | | | |
|---|---|---|---|---|---|
| | Samole re: case background; Retrieve proofs of claim filed in bankruptcy (YCC) | | | | cut by .4 |
| 03/27/13 | Attend telephonic status conference and memorialize Court's additional language as to specific tasks and scope of retention employing KT&T (DAS) | 1.3 | $520.00 | $520.00 | Unnecessary duplication of work performed by CLC |
| 03/27/13 | Finalize engagement letter and disclosure (CLC) | .5 | $247.50 | $247.50 | Unnecessary duplication of work performed by DAS |
| 03/28/13 | Retrieve and review notice of hearing minutes of preliminary hearing approving KT&T retention and vacating final hearing set for tomorrow (DAS | .1 | $40.00 | $40.00 | Excessive time spent on task[27] |
| 04/02/13 | Telephone conference with L. Bloom re: strategy (CLC) | .8 | $396.00 | $396.00 | Unnecessary duplication of work performed by DAS attending the same teleconference |
| 04/10/13 | Phone conference with FDIC-R counsel as to escrow agreement concept (DAS) | .2 | $80.00 | $80.00 | Unnecessary duplication of work |
| 04/16/13 | Prepare for and participate in conference (DAS) | 1.0 | $400.00 | $400.00 | Unnecessary duplication of work performed by CLC attending same conference |
| 04/22/13 | Research re: background (CLC) | 1.4 | $693.00 | $693.00 | Description fails to adequately describe the work performed[28] |
| 04/24/13 | Telephone conference with D. Samole re: status of copy job (YCC) | .2 | $40.00 | $40.00 | Clerical work |
| 04/29/13 | Confer with IT folks about imaging/copying digitized | .3 | $120.00 | $120.00 | Overhead/clerical |

---

[27]Just because the minimum billing increment is one-tenth of an hour does not mean that tasks which likely take less than one minute to complete should be billed at .1. At $400 or more per hour, minor tasks each billed at one-tenth of an hour quickly add up to a significant amount.

[28]Cf. *In re Threadneedle Street, LLC*, 2012 WL 243765, *9 (Bankr.D.Colo. Jan. 25, 2012)(disallowing fees based on an "insufficient description of the tasks performed").

| | | | | |
|---|---|---|---|---|
| | records (DAS) | | | | |
| 05/02/13 | Review summons and calendar date of scheduling conference; deal with service of summons on FDIC and verify service upon the appropriate designees; confer with D. Samole re: same; review certificate of service and comment on same (YCC) | 1.2 | $240.00 | $80.00 | Lumped time entry/cut by .4 |
| 05/22/13 | Telephone conference with C. Pierce re: continuance (.1); telephone conference with C. Wilson re: same (.1); draft email to opposing counsel (.1); review response (.1) (CLC) | .4 | $198.00 | $198.00 | Unnecessary duplication of work performed by C. Pierce |
| 05/23/13 | Review stipulated order vacating scheduling conference and continuing scheduling conference and calendar same (YCC) | .1 | $20.00 | $20.00 | Clerical task |
| 06/06/13 | Review stipulated order extending time for FDIC to file answer; calendar date (YCC) | .1 | $20.00 | $20.00 | Clerical task |
| 06/25/13 | Review court notice scheduling continued status conference and deadlines related to final hearing n FDIC's motion to dismiss; calendar same (YCC) | .1 | $20.00 | $20.00 | Clerical task |
| 07/22/13 | Receive voicemail from J. Wayser (CLC) | .1 | $49.50 | $49.50 | Excessive time billed for task |
| 08/07/13 | Deal with hearing binder re: FDIC's motion to dismiss (YCC) | .2 | $40.00 | $40.00 | Unnecessary duplication of work; clerical task |
| 08/08/13 | Travel to Albuquerque and work with Ms. Lopez-Castro to prepare for hearings and follow up meeting with Trustee (DAS) | 10.0 | $4,000.00 | $2,000.00 | Travel to NM unnecessary; preparation for hearing is compensable (cut by 5.0) |
| 08/08/13 | Travel to Albuquerque (read cases and prepare for oral | 10.0 | $4,950.00 | $990.00 | Excessive time billed for travel |

| | | | | | |
|---|---|---|---|---|---|
| | argument during travel) (10.0); meet with Trustee to discuss approach to hearing (CLC) | | | | time; reduced to 8.0 hours of billable time |
| 08/09/13 | Prepare for and attend hearings on motion to dismiss (2.4); confer with trustee about hearing and next steps and travel back to Miami (7.2) receive and review hearing minutes (.1); perform preliminary research on general prohibition against successive motions to dismiss (.3) (DAS) | 10.0 | $4,000.00 | $3,840.00 | Travel and attendance at hearing unnecessary (cut by 9.6) |
| 08/09/13 | Final preparation and attendance at hearing in opposition to motion to dismiss; travel to Miami from Albuquerque (CLC) | 10.0 | $4,950.00 | $990.00 | Excessive time billed for travel time; reduced to 8.0 hours of billable time |
| 07/19/13 07/22/13 07/23/13 07/30/13 07/31/13 08/05/13 08/06/13 08/07/13 | Review, Key Cite, prepare case summaries, and prepare talking points for cases cited in Motion to Dismiss . . . (DRM) | 32.8 | $9,020.00 | $2,997.50 | Excessive time billed for task (cut by 10.9 hours) |
| 09/03/13 | Confer with D. Samole re: preparing KT&T's first interim application; review and revise August bill (YCC) | .4 | $80.00 | $80.00 | Clerical/office overhead[29] |
| 09/28/13 | Work on exhibits to fee application (YCC) | 1.7 | $340.00 | $340.00 | Clerical/office overhead |
| | | | | **TOTAL:** | **$14,749.50** |

FDIC-R also objects to the travel costs for which KT&T requests reimbursement. These

expenses represent roundtrip airfare from Miami to Albuquerque for five people as follows:

---

[29]*See CF & I Fabricators,* 131 B.R. at 485-86 (finding that time spent creating time records and billing statements is part of office overhead and is not compensable: "[p]osting the information contained in the daily time sheets into an accounting system and printing the bill is a routine overhead expense . . ." Likewise, "[p]roofreading the data contained in the application, as with any other clerical or secretarial task, is not compensable.").

| Travel Dates | Airfare | Other Related Travel Costs |
|---|---|---|
| 04/22/13 – 04/24/13 | $1,582.60 | $220.00 (flight change fee) |
| 04/22/13 – 04/24/13 | $1,582.60 | |
| 04/22/23 – 04/24/13 | $945.60 | $24.30 (mileage) |
| 08/08/13 – 08/09/13 | $915.60 | |
| 08/08/13 – 08/09/13 | $915.60 | |

No evidence was presented which might justify or explain the higher fare charged for two of the three tickets purchased for the trip in April 2013, nor for the flight change-fee, nor for the mileage.   The Court will therefore reduce the requested travel expenses for the April 2013 trip to the least expensive airfare and disallow the additional travel expenses representing the flight change fee and mileage.[30]   *Cf. In re Geneva Steel Co.,* 258 B.R. 799, 804 (Bankr.D.Utah 2001)(allowing reasonable airfare costs but reducing the compensable  fare to the lesser amount charged by other professionals in the case).[31]   Having determined that insufficient evidence was presented to establish that it was necessary for Mr. Samole to travel to Albuquerque for the final hearing on August 9, 2013, the Court will also disallow $915.00 representing the airfare for that trip.  In sum the Court will disallow a total of $2,433.90[32] from the requested expenses and $14,749.50 of the requested fees from the KT&T Fee Application.   The balance of the requested expenses and the balance of the requested fees in the KT&T Fee Application are allowed.

---

[30]Each of the $1,582.60 fares will be reduced to equal the lower fare of $945.60.

[31]*See also, In re EWI, Inc.,* 208 B.R. 885, 897 (Bankr.N.D.Ohio 1997)(disallowing airfare expense absent receipt of supporting documentation).

[32]

| Description | Amount Disallowed |
|---|---|
| Airfare  of $1,582.60 | $1,582.60 - $945.60 = 637.00 |
| Airfare of $1,582.60 | $1,582.60 - $945.60 = 637.00 |
| Mileage | $24.30 |
| Flight Change Fee | $220.00 |
| Airfare | $915.60 |
| **TOTAL:** | **$2,433.90** |

Based on the foregoing, the Court will allow, in part, and disallow, in part each of the

three pending fee applications.   The Court will enter separate orders consistent with this

Memorandum Opinion.

_____

ROBERT H. JACOBVITZ
United States Bankruptcy Judge


Date entered on docket:  March 24, 2014

COPY TO:

Linda S Bloom
Linda S. Bloom, P.A.
Attorney for Chapter 7 Trustee
13170 Central Ave SE Ste B #318
Albuquerque, NM 87123-5588

Chris W Pierce
Hunt & Davis, P.C.
Attorney for Chapter 7 Trustee
2632 Mesilla St. NE
Albuquerque, NM 87110

Corali Lopez-Castro
David A. Samole
Kozyak Tropin & Throckmorton PA
Special Counsel for the Chapter 7 Trustee
2525 Ponce De Leon 9th Floor
Miami, FL 33134

Jeffrey A. Sandell
Federal Deposit Insurance Corporation
1601 Bryan St, 15th Floor
Dallas, TX 75201

Joshua David Wayser                         United States Trustee
Katten Muchin Roseman LLP                   PO Box 680
Attorney for FDIC-R                         Albuquerque, NM 87103
2029 Century Park East, Ste 2600
Los Angeles, CA 90067

| | Research/ Review[1] | | Draft Brief | | Hearing Prep/Travel | | Case Summaries | Conferences re: MTD issues/legal research, etc. | | Hearing Time/ Travel | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **DAS** | 06/10/13 | .7 | 06/19/13 | 1.6 | 07/30/13 | .2 | | 06/18/13 | .2 | 8/09/13 | 2.4 |
| | 06/13/13 | 1.0 | 06/20/13 | 1.3 | 08/05/13 | .4 | | 06/19/13 | .2 | 8/9/13 | 7.6 |
| | 06/17/13 | .6 | 06/21/13 | 1.0 | 08/05/13 | .6 | | 06/21/13 | .2 | | (includes |
| | 06/18/13 | 1.8 | 06/24/13 | 2.2 | 08/05/13 | .3 | | 06/21/13 | .2 | | travel |
| | 06/23/13 | .4 | 06/26/13 | .7 | 08/06/13 | .3 | | 06/23/13 | .1 | | time) |
| | 06/26/13 | .4 | 07/15/13 | .3 | 08/06/13 | .6 | | 06/26/13 | .3 | | |
| | 07/09/13 | 1.0 | | | 08/06/13 | .2 | | 07/02/13 | .4 | | |
| | 07/15/13 | 2.8 | | | 08/06/13 | 1.6 | | 07/03/13 | .1 | | |
| | 07/30/13 | .7 | | | 08/07/13 | 1.5 | | 07/05/13 | .3 | | |
| | 07/30/13 | .4 | | | 08/07/13 | .5 | | 07/10/13 | .5 | | |
| | 07/30/13 | .6 | | | 08/08/13 | 10.0 | | 07/10/13 | .3 | | |
| | 07/31/13 | .6 | | | | (includes | | 07/17/13 | .3 | | |
| | 07/31/13 | .5 | | | | travel | | 07/30/13 | .3 | | |
| | 08/01/13 | 1.2 | | | | time) | | 07/31/13 | .6 | | |
| | 08/04/13 | .6 | | | | | | 07/31/13 | .3 | | |
| | | | | | | | | 08/05/13 | .2 | | |
| | **TOTAL:** 13.3 hrs | | **TOTAL:** 7.1 hrs | | **TOTAL:** 16.2 hrs | | | **TOTAL:** 4.5 hrs | | **TOTAL:** 10 hrs | |
| | $5,560.00 | | $2,840.00 | | $6,480.00 | | | $1,800.00 | | $4,000.00 | |

---

[1]The Court attempted to include only the legal research that related to FDIC-R's motion to dismiss and to exclude legal research that related to the adversary proceeding generally.  In some instances the Court had to guess based on the time entry description whether to include the time as work related to FDIC'R's motion to dismiss.

1

| | Research/ Review | | Draft Brief | | Hearing Prep/ Travel | | Case summaries | | Conferences re: MTD issues/legal research, etc. | | Hearing Time/ Travel |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLC** | 6/11/13 | .3 | 7/05/13 | .9 | 7/12/13 | .6 | | | | | 10.0 |
| | 7/11/13 | .8 | 7/10/13 | 1.2 | 7/15/13 | .4 | | | | | (includes travel time) |
| | 7/15/13 | .6 | | | 7/19/13 | .8 | | | | | |
| | | | | | 8/05/13 | 1.8 | | | | | |
| | | | | | 8/06/13 | 2.2 | | | | | |
| | | | | | 8/07/13 | 2.0 | | | | | |
| | | | | | 8/08/13 | 10.0 | | | | | |
| | | | | | | (includes travel time) | | | | | |
| | **TOTAL:** 1.7 hrs **$841.50** | | **TOTAL:** 2.1 **$1,039.50** | | **TOTAL:** 17.8 hrs **$8,811.00** | | | | | | **TOTAL:** 10 hrs **$4,950.00** |
| **DRM** | 6/24/13 | 6.2 | | | 8/05/13 | .8 | 7/19/13 | 5.5 | 06/26/13 | .1 | |
| | 6/26/13 | 3.5 | | | 8/06/13 | .5 | 7/22/13 | 6.2 | 07/10/13 | .2 | |
| | 7/10/13 | 1.4 | | | 8/06/13 | .5 | 7/23/13 | 5.5 | | | |
| | 7/10/13 | 2.6 | | | 8/07/13 | .3 | 7/30/13 | 2.8 | | | |
| | | | | | 8/07/13 | .5 | 7/31/13 | 1.8 | | | |
| | | | | | | | 8/05/13 | 5.5 | | | |
| | | | | | | | 8/06/13 | 4.0 | | | |
| | | | | | | | 8/07/13 | 1.5 | | | |
| | **TOTAL:** 16 hrs **$4,400.00** | | | | **TOTAL:** 2.8 hrs **$770.00** | | **TOTAL:** 32.8 **$9,020.00** | | **TOTAL:** .3 **$82.50** | | |

2

**TOTAL BY CATEGORY:**

| | Research/Review | Draft Brief | Hearing Prep/ Travel | Case Summaries | Conferences re: MTD Issues/legal research, etc. | Hearing Time/ Travel |
|---|---|---|---|---|---|---|
| **Total Hours** | 31 | 9.2 | 36.8 (including 20 hrs of travel time) | 32.8 | 4.8 | 20 |
| **Total Cost** | $10,801.00 | $3,879.00 | $16,061.00 | $9,020.00 | $1,882.50 | $8,950.00 |

**TOTAL: $50,593.50**

3